Skodis et ux. *v.* Phila. R. T. Co., Appellant.

Argued October 2, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Thomas B. K. Ringe,* and with him *Bernard J. O'Connell,* for appellant.

*James F. Masterson,* for appellee.

OPINION BY LINN, J., January 26, 1932:

Defendant appeals from judgments in favor of husband and wife in suits to recover damages for injuries to the wife, contending it was not negligent and that the injured plaintiff was guilty of contributory negligence.

The accident occurred at about 4 P. M., July 4, 1928. Plaintiffs alighted from a street car on Rising Sun Avenue at its intersection with 54th Street or Adams Avenue in Philadelphia. Their purpose was to walk southward on Rising Sun Avenue from that point to a picnic ground. Rising Sun Avenue has both north bound and south bound street car tracks. At Adams Avenue, these tracks, up to that point in the middle of the street, diverge, the south bound track being on the right side, looking south, and the north bound track on the left side. A city engineer called by plaintiffs testified that the distance between the two sets of tracks was 28 feet. The section is not built up and there are no sidewalks for pedestrians; the only place for them to walk was on the paved surface between the north bound and the south bound car tracks. The spaces between the rails of the car tracks, and for a foot on the inner side of each near rail, were not graded up to the level of the paved surface of the avenue, and were not prepared to accommodate pedestrians. This physical condition constituted notice to other users of the highway of the use by the defendant of the parts occupied by the tracks, and of possible danger to others who might get in the way of street cars.

After walking on Rising Sun Avenue for a distance of about 650 feet from where she left the street car on which she had been a passenger, Mrs. Skodis was struck by a south bound street car moving in the same direction in which she was walking. Plaintiffs testified that they walked on the right side of the surfaced part of the avenue, looking south, about 4 feet from the nearest rail. While there were other pedestrians on the road, none was just ahead or close behind plaintiffs; they were "quite a distance away from me." Motor traffic moved in each direction. Mrs. Skodis testified in direct examination: "I was away about four feet from the trolley car and I watched for machines and I watched for trolley cars and when the machine blew the horn I walked aside so I could not be hurt by the machine, when the trolley car came along, why, I tried to pass away from the track as far as I possibly could to avoid being struck, every step, every time I looked, I watched whether a machine was coming or a trolley car, and when a machine comes along I walked near to the trolley car, and when the trolley car comes along I walked away from the trolley cars. There is a big hill there at that point and there was a big truck passed and then I heard the noise of the machine and after that truck passed I walked nearer to the trolley car track and then suddenly I was struck and I fell to the roadway. ......
Q. If I understood you correctly you say you were walking about four feet from the trolley tracks? A. Yes. Q. And that a large truck came by, blew his horn and you stepped close to the trolley tracks? A. Yes, sir, about a foot and a half. Q. What do you mean a foot and a half, from the trolley track? A. Yes, sir, I came nearer to the track, nearer to the trolley tracks, I was a foot and a half away from it. Q. Why did you step a foot and a half closer to the track or away from the track? A. Because I wanted

to avoid the truck, which was a large truck. Q. Was that the time you were struck by the trolley car? A. Yes, sir. Q. That is the time you were struck by the trolley car? A. Yes, sir.'' ''After that truck passed,'' she ''walked nearer to the trolley car track,'' and then was struck.

If she had walked on the left side of the avenue, she would have been facing both approaching north bound trolley and automobile traffic, (plaintiffs say that traffic was quite active), and would, therefore, have been able to make the observations, which she said she made, with more ease and certainty than while walking on the right side looking backward, as she says, ''every step.'' She states that one street car passed her before the one that struck her. The evidence does not give the overhang of the trolley car. She did not testify that she was struck by the front of the trolley car; the only inference that can properly be drawn from her evidence is that she was struck by the side of it; we note, in passing, that defendant's evidence, which we do not now consider, is that she ''bumped'' into the side of the car, just after it was started at Adams Avenue. Her husband was walking four feet ahead of her and states that he knew nothing of the accident until after she was struck. His evidence differs from hers; he says that after the truck, apparently the one of which she spoke, had passed, ''a few cars passed and we would have to step close to the trolley tracks, but we were watching for the trolley car to come;'' he adds that he and his wife were walking when she was struck. They testified that they heard no signal given by the approaching trolley car,—he also adds that none was given;—but that is immaterial, if, as she says, she was making observations of the approaching trolley at ''every step;'' cf Smith v. P. R. T. Co., 252 Pa. 435. If we assume that the approaching motorman

saw her walking 4 feet away from the rail, and saw her making the observations which she says she made, his failure to sound warning of his approach which she saw, was not the proximate cause of the accident; nor was he required to anticipate that, in the circumstances stated, she would suddenly step into the way of his car. The plaintiffs rely on Kennewig v. Pittsburgh Railways Company, 239 Pa. 250; described in the opinion, as a close case, but it does not rule this. In that case, a 4 feet wide cinder walkway extended immediately alongside the car track. The plaintiff, while using that footway was injured by a street car. Both parties, to the extent that the street car overhung the pathway had the right to be there, each duly regarding the prior occupation of the other; it was therefore, for the jury to determine whether the plaintiff was guilty of contributory negligence and the defendant of negligence; the court notes "the fact that there was no well marked division line between the cinder walk and the tracks of the street railway company," a fact that "required a greater degree of care to be exercised by both parties ......" Here the circumstances are different. There was a well marked unsurfaced space between the near rail and the surfaced part of the highway, constituting warning that it was no place for pedestrians; in addition, the plaintiff here was making observations and was bound to see what was in sight and was near. If the plaintiffs did what they testify that they did, they must have seen this street car, and will not be permitted to say they did not see it.

We are all of opinion that the plaintiff was guilty of contributory negligence.

Both judgments are reversed, and judgment is now entered for the defendant.