## McNeal v. Hettich, Appellant.

Argued March 8, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Wm. M. Rosenfield,* for appellant.

*J. Roy Lilley,* and with him *Wm. J. Wilson,* for appellee.

Opinion by Baldrige, J., April 23, 1934:

The plaintiff obtained judgment in this action of trespass growing out of an automobile accident.

On Saturday evening, April 9, 1932, the plaintiff, his deceased wife and his mother-in-law, Mrs. Sheffler, residents of Towanda, went to a dance north of Towanda Borough. Shortly after midnight, they started home, traveling in a southerly direction on York Avenue, which is part of Roosevelt Highway. It had been raining and at that time it was "misting." At the borough line they went on the sidewalk, where water had accumulated in pools in the low spots. After

walking on the sidewalk for some distance, they returned to the cartway on account of the wet condition of the sidewalk. The plaintiff testified, however, that water was "probably" running on the street and there was as much in the gutter as on the sidewalk. Mr. and Mrs. McNeal continued walking on the right side of the cartway—the wife near the curb, the plaintiff immediately to her left, and Mrs. Sheffler on a grass plot between the curb and the sidewalk, for a distance not definitely shown. Mrs. Sheffler stated that it was "not long before they was hit." There was evidence to justify the conclusion that the McNeals were in the cartway in the neighborhood of 200 feet before they were hit by a car driven by defendant on the right side of the road, which resulted in severe injury to the plaintiff and the death of his wife.

The plaintiff's statement of claim alleged negligence, consisting of defendant's machine not being equipped with proper brakes, headlights, etc., that the steering apparatus was defective, and that his car was driven at an excessive rate of speed. No direct evidence was offered by plaintiff to support the charge of alleged negligence, but he contends that as he was found lying 40 feet beyond the body of his wife, the speed must have been excessive, although there was no proof to show whether he had been dragged or carried by the car. Defendant's car, after the accident, was parked 75 feet beyond the point of the accident. Defendant testified that he was traveling at the rate of 20 to 25 miles an hour.

Assuming there was sufficient proof of the defendant's negligence in traveling at too great a speed, the evidence irresistibly points to the contributory negligence of the plaintiff and his wife. The borough sidewalk afforded them a place to walk free of harm. At this hour of the night, under unfavorable weather conditions, they voluntarily left a place of assured safety

and went on a highway they knew to be dangerous. Many cars were coming from the dance. As plaintiff stated: "The traffic was heavy coming from the north ...... We thought we were safer traveling on the sidewalk than on the highway." He testified further: "Q. You knew it was dangerous on the highway? A. Yes, sir. Q. You knew the sidewalk, three or four feet from the highway, was provided for you to walk on, didn't you? A. If it was fit to walk on, yes, sir."

In Virgilio v. Walker & Brehm, 254 Pa. 241, 245, 98 A. 815, the Supreme Court held that when one uses a highway between the regular crossing places, "he is bound to a high degree of care, and if a pedestrian goes further and deliberately selects the roadway of a city street for the purpose of walking longitudinally thereon, he is obligated to still greater care; in fact, one placing himself in such danger must be most vigilant to look after his own safety." Therefore, when the plaintiff and his wife deliberately forsook a place of safety and attempted to walk in a place of known danger, where the superior right of travel was in the defendant (Rhoads et ux. v. Herbert, 298 Pa. 522, 525, 148 A. 693), they were bound to exercise great care. Undoubtedly, if they had attempted to cross the street, without looking, when vehicles were approaching, they would have been chargeable with carelessness: Anderson v. Wood, 264 Pa. 98, 107 A. 658. It would necessarily follow that walking along the highway, without looking, under the prevailing conditions, would be even more dangerous than crossing. This is especially true, here, as the plaintiff and his wife were walking with their backs toward traffic. If they chose to walk on the cartway, they should have at least gone to the left side. In Skodis et ux. v. P. R. T., 103 Pa. Superior Ct. 533, 537, 158 A. 587, where the plaintiffs were walking southward on Rising Sun Avenue and Mrs. Skodis was struck by a southbound

street car, moving in the same direction in which she was walking, we said: "If she had walked on the left side of the avenue, she would have been facing both approaching northbound trolley and automobile traffic (plaintiffs say the traffic was quite active), and would, therefore, have been able to make the observations, which she said she made, with more ease and certainty than while walking on the right side looking backward, as she says, 'every step.'" Notwithstanding the plaintiff and his wife were walking with traffic and knew that cars were traveling in that direction, plaintiff testified: "Q. You did not look back at all when you walked along that road? A. No, sir."

We are confronted with circumstances which required a, high degree of vigilance and caution. Instead of exercising great care, according to the plaintiff's own testimony, no precaution was taken. They walked on heedlessly, without using prudence or their faculties. It is clear that this lack of care, under the dangerous conditions which prevailed, convicts the plaintiff and his wife of contributory negligence.

The learned court below seemed to rely upon Lamont v. Adams Express Co., 264 Pa. 17, 107 A. 373; Petrie v. E. A. Myers Co., 269 Pa. 134, 112 A. 240; and King et al. v. Brillhart, 271 Pa. 301, 114 A. 515. In the first case, a pedestrian crossed the street between crossings. The court held that "it cannot be affirmed, however, as a fixed rule that one crossing a street diagonally must turn and look back; whether he should do so depends upon the circumstances of the particular case. He must be alert but where he should look depends upon the law of the road, the current of traffic, his means of observations, the local conditions, the position and direction of moving vehicles, etc.; and as the duty shifts according to circumstances there can be no set rule applicable to all cases." There, the plaintiff looked in both directions for approaching ve-

hicles; seeing none, he started diagonally across the cartway, 26 feet wide, on a jog trot. He continued to look west and had passed the north side of the street and the car track, and had entered the south portion of the street where the traffic was eastbound, when he was hit by a westbound truck that was over on the south—or wrong side of the street. The driver testified that he turned to the left side to keep clear of a trolley car.

In the Petrie case, a pedestrian was walking on the extreme right portion of a country road, 12 inches from the outer edge, leading a cow by a rope. There was no sidewalk and the ground to the right was wet and muddy. In that case, the lower court, in its opinion which was affirmed by a per curiam, considered and distinguished the facts therein from Virgilio v. Walker & Brehm, supra, directing attention to the existence of sidewalks in the latter case.

In the last case, again there was no sidewalk. In its absence it was held that the pedestrian's rights on the paved roadway (apparently in the country) are equal to those of vehicles. There, it was broad daylight, and the injured boy was walking along the edge of the pavement, and was struck by an automobile driven by defendant who saw the boys in ample time to have avoided the accident.

These cases, with their dissimilar facts, are distinguishable from the case at bar.

A careful consideration of this record leads us to the conclusion that the court was in error in submitting this case to the jury.

Judgments in both appeals are reversed, and judgment is now entered for the defendant.

Judge JAMES dissents.