# Virgilio, Appellant, *v.* L. B. Walker and F. C. Brehm, Copartners Doing Business as L. B. Walker Company.

*Negligence—Automobiles—Pedestrian—Street cleaner — Collision between crossings—Nonsuit.*

1. In a negligence case a nonsuit can be entered only when it is inconceivable on any reasonable hypothesis that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most advantageous to the plaintiff, could determine in his favor the controlling issues involved.

2. Vehicles have the right of way on the portion of the highway set aside for them, but at crossings, all drivers, particularly of motor vehicles, must be highly vigilant and maintain such control that on the shortest possible notice they can stop their cars so as to prevent danger to pedestrians. Between crossings drivers are not held to this same high standard of care, but nevertheless, they must be constantly on the lookout for the safety of others.

3. Where a pedestrian deliberately selects the roadway of a city street for the purpose of walking longitudinally thereon, he must be most vigilant to look after his own safety.

4. In an action against an automobile owner to recover damages for the death of plaintiff's husband, an inlet cleaner, a compulsory nonsuit was properly entered where it appeared that decedent was walking longitudinally along the street from one street intersection to another; that the street was divided in the middle by a grass plot, the west bound traffic going on one side and the east bound on the other; that decedent was struck from behind by plaintiff's automobile while it was going at a rate of from 12 to 15 miles per hour, and that, when the car gave a warning signal, he became confused and "zigzagged" into its path.

Argued April 26, 1916. Appeal, No. 143, Jan. T., 1916, by plaintiff, from judgment of C. P. Erie Co., Sept. T.,

1914, No. 16, refusing to take off compulsory nonsuit in case of Augustina Virgilio v. L. B. Walker and F. C. Brehm, Copartners, doing business under the name, style and title of L. B. Walker Company.   Before Brown, C. J., Mestrezat, Potter, Stewart and Moschzisker, JJ. Affirmed.

Trespass to recover damages for personal injuries.   Before Whittelsey, J.

The facts appear by the opinion of the Supreme Court.

The lower court entered a compulsory nonsuit which it subsequently refused to take off.   Plaintiff appealed.

*Error assigned,* among others, was in refusing to take off the compulsory nonsuit.

*J. Orin Wait,* of *Reed, Wait & Spofford,* for appellant. —The case was for the jury: Jones Brothers v. Greensburg, Jeannette & Pittsburgh St. Ry. Co., 9 Pa. Superior Ct. 65; McFern v. Gardner, 121 Mo. App. 1 (97 S. W. Repr. 972) ; Rauch v. Smedley, 208 Pa. 175; Schwartz v. Bream, 130 Pa. 411; Smith v. O'Connor, 48 Pa. 218; Bastian v. Philadelphia, 180 Pa. 227; Bucklin v. Davidson, 155 Pa. 366.

*Miles B. Kitts,* of *Kitts & Duff,* for appellee.

Opinion by Mr. Justice Moschzisker, May 23, 1916:

On April 23, 1914, Antonio Virgilio, an employee in the street department of the City of Erie, was knocked down by defendants' automobile, and, as a result, lost his life; his widow sued alleging negligence; the court below entered a nonsuit, which it subsequently refused to remove; hence this appeal.

The accident happened on West Tenth street, between Plumb and Cascade streets in the City of Erie.   Tenth street is a public highway extending through that city in an easterly and westerly direction, 100 feet in width, with

a footway on each side; the space between curb lines is 56 feet, of which 16 feet in the center of the street is occupied by a grass plot, or "boulevard," leaving a roadway 20 feet wide on either side thereof, that on the north side, where the accident happened, being used exclusively for westbound traffic.   There are no cross roads running into Tenth street between Plum and Cascade, and the only break in the grass plot,. or boulevard, is a 30-feet-wide opening midway between the last two streets; so, at the point in question, aside from this opening, a driver of a vehicle has a straightaway course without fear of cross-obstruction, from the west line of Plum to the east line of Cascade street, of 690 feet; in this connection, the appellant states in her paper book, "There are no cross-walks across Tenth street, but pedestrians cross the street......at the intersecting streets."

On the day of the accident the plaintiff's husband had cleaned a "spill," or inlet, at the southeast corner of Tenth and Plum streets, and (again in the words of the appellant) he was "on his way to clean the spill on the north side of Tenth street midway beween Plum and Cascade and about 330 feet west of Plum."   Instead of keeping to the proper sidewalk or using the boulevard space, or even making a direct right angle cut across, Mr. Virgilio appears to have walked along Tenth street near the center of the northern roadway; when somewhere between 20 and 82 feet west of Plum street, the accident happened.   The testimony indicates that both the automobile and Mr. Virgilio were proceeding with the westward line of traffic, the latter being "more on the north side of the street than the car"; in fact, when struck, he was within two or three feet of the north curb of the street.

An eye witness describes the actual collision thus: "He had a big, long spoon (shovel) on his shoulder and was walking down west without paying attention to the car......; when he heard the car he turned around and his spoon was in the way, and he dodged back and fell

and it (the car) hit him"; another said, "Tony wasn't looking back at all......and it struck him in the back and he got hit between the legs and went around like that." Only one observer gave any competent testimony as to the speed of the automobile; this man said he noticed immediately before the accident the car was going about twice as fast as he was then walking, and remarked to himself at the time, "That fellow is not running very fast." The witness in question would not place the rate of speed at more than 12 or 15 miles an hour, and, since the car stopped within a distance estimated at from 15 to 25 feet of the place of the collision, it is likely the speed was even less than this estimate. It plainly appears that the driver of the automobile blew his horn when he was yet east of Plum street, and that, immediately before the accident, he gave a "frantic blowing of the horn and twice called loudly, 'Look out.'" The sole witness who was asked the question, "Did he (Virgilio) seem to be scared when the fellow hollered 'Look out,'" replied, "No, sir." A person who saw the accident said that Virgilio was "zigzagging" in the street just before he was struck, and another, who gave the clearest testimony on the subject, that "it looked as if he was kind of jockeying to get out of the way" after "they had given him the warning"; the latter witness stated that, after the accident, he observed the tracks of the automobile, and they indicated the driver of the car first intended to go south of Virgilio and then swerved to the north, "and this man in trying to get out of the way kind of run north, too." Finally, the evidence shows that the accident happened on a clear day, when there was nothing to obstruct the view of either the chauffeur or the pedestrian, both of whom were of average mental and physical capacity.

There is but one assignment of error, and that complains of the refusal to take off the nonsuit. In a case of this character, a nonsuit can be entered only when it is inconceivable, on any reasonable hypothesis, that a

mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most advantageous to the plaintiff, could determine in his favor the controlling issues involved. Here these issues concern the alleged negligence of the defendant and contributory negligence of the plaintiff's husband, and the governing rules relating thereto may be stated thus: The law requires that every person shall take due care for the safety of himself and others according to the circumstances in which he is placed. Vehicles have the right of way on the portion of the highway set aside for them, but at crossings all drivers, particularly of motor vehicles, must be highly vigilant and maintain such control that, on the shortest possible notice, they can stop their cars so as to prevent danger to pedestrians; on the other hand, between crossings drivers are not held to the same high standard of care, although, of course, they must be constantly on the lookout for the safety of others. While conditions have not as yet arisen in any case brought before us where we have felt called upon to rule that it was negligence per se for a pedestrian to traverse a public highway between the regular crossing places, nevertheless, when one does so, he is bound to a high degree of care, and if a pedestrian goes further and deliberately selects the roadway of a city street for the purpose of walking longitudinally thereon, he is obligated to still greater care; in fact, one placing himself in such danger must be most vigilant to look after his own safety.

When we consider the evidence in the light of these relevant principles of law, it is clear beyond doubt that the defendants could not properly be convicted of negligence, even if Mr. Virgilio's own carelessness did not directly contribute to his death; for, so far as the testimony indicates, this is a case where, in view of the surrounding conditions, the automobile was going at a reasonable speed, under proper control, and where the man in charge apparently gave such warnings as the cir-

cumstances required. The latter may have misjudged the probable movements of the pedestrian while he was "zigzagging" in front of the automobile, and this may, in the end, have been the cause of the collision; but there is nothing in the story told by any of the witnesses which would justify an inference that the driver wantonly ran into Mr. Virgilio, or that he negligently omitted to do those things which an ordinarily careful person similarly situated would have done. In short, the unfortunate man who was struck appears to have jumped around in front of the car, and, while both the chauffeur and he were endeavoring to avoid the threatened danger, "zigzagged" or "jockeyed" himself into the collision.

The assignment of error is overruled, and the judgment is affirmed.