Lowers et al., Appellant, v. Zuker.

Argued April 22, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

*W. H. Martin*, for appellant.

*F. C. Ross* of *Brandon, Brandon & Ross*, for appellee.

Opinion by Linn, J., July 8, 1931:

Husband and wife claimed damages for injuries to the wife resulting from defendant's alleged negligent

driving an automobile. The jury returned a verdict for the wife but, somewhat inconsistently, found for defendant in the husband's case. The learned court below entered judgment for the defendant notwithstanding the verdict for the wife; she has appealed,— he has not.

The accident happened in the borough of Petrolia at 11 A. M. on a clear August day. In the opinion filed under Rule 58, the learned trial judge states that it occurred "on the outskirts [of the borough] where there are no cross streets or regular crossings......." As much of defendant's argument is based on a pedestrian's duty in crossing a road 'between crossings,'— a view of the case which we consider too limited—it may be desirable, with that contention in mind, to describe the locus in quo as it appears in the record, and, in doing so, as well as in reviewing the record generally, we, of course, consider only the evidence (it was all oral) supporting plaintiff's verdict and discard the rest.

Defendant was entering the borough, driving downgrade in a northern direction on a state highway having a concrete surface twenty feet wide, with a berm on each side about one and a half feet wide. Plaintiff's house was on the right or east side of the highway; on the opposite side of the highway were two houses; there were no other houses in the immediate vicinity of the accident. From plaintiff's house at or near the foot of the hill, the grade of the highway ascends southward three hundred and sixty feet to the top of the hill down which defendant drove. There are no houses between the top of that hill and plaintiff's house, and no so-called street crossings or crossing places for pedestrians. The evidence does not inform us definitely about other houses near plaintiff's on either side of the highway north of plaintiff's house, but it is clear there are none within at least a hundred

feet. About three hundred feet north of plaintiff's house, a railway track crosses the highway, and as we understand it, (no street plan was furnished), the highway curves to the left at or about the railway crossing and continues into the built up portion of the borough. At that railway crossing, and beyond it to the left in the town, there may be street crossings for pedestrians, but there are none from the railroad southward to and beyond the top of the hill from which defendant came, six hundred and sixty feet away. A witness was asked whether there were crossings "where pedestrians pass back and forth—crossing over," and said "in along there," "people just cross the macadam [concrete] road," "wherever they can get across."

We understand, then, that within the stretch of six hundred and sixty feet of highway there are no crossing places specially provided for pedestrians; that the section is built up in the very limited way described, so that, by force of circumstances, as the witness described it, "people just cross" "wherever they can get across." All this was obvious to the defendant as he descended, and a condition which the law required him to take into account. The plaintiff had been in one of the houses opposite her own, and in returning to her house, had reached the edge of the concrete surface of the highway for the purpose of crossing; there she looked southward to the top of the hill three hundred and sixty feet on her right and saw that nothing was approaching. She then started to walk across and, as a witness, who saw her, stated, "she was over halfway across the road" when she was struck by defendant's car and very seriously injured. The car then went some seventy-five feet, left the road "onto a bank," struck and broke a two inch gas pipe, and turned over. Defendant's driving was clearly negligent, as the verdict establishes on adequate evidence: Johnson v.

Abbott's Dairies, 295 Pa. 548; Newman v. Protective Motor Service, 298 Pa. 509; Moore v. Leininger, 299 Pa. 380.

The learned trial judge held that plaintiff was guilty of contributory negligence and entered judgment for the defendant.

The general rule is that travelers on a highway have equal rights unless modified by statute or municipal ordinance, and either may enjoy them at will, but only in the exercise of that measure of care required to avoid encroachment on the rights of the other lawfully used; their duties are reciprocal; whether one has encroached depends on the measure of care required in the circumstances: Weiss v. Pittsburgh Rwy. Co., 301 Pa. 539, 542; Warruna v. Dick, 261 Pa. 602. If the locus in quo is in a built up section, it may become important to consider elements not present in sparsely built up sections or in the open country. If a traveler is crossing at a foot crossing, or near one, or between two, or far from any, the particular circumstances must be considered. It is settled that one need not anticipate that another will be negligent (Hayes v. Schomaker, 302 Pa. 72, 76; Weiss v. Pittsburgh Rwy. Co., supra), and neither can test an obvious danger resulting from proximity of the other. As one must have his car under such control that he may stop at a crossing if required, (Rhoads v. Herbert, 298 Pa. 522), he must drive so that he sees street intersections or crossing places reasonably obvious; if there are no intersections or crossing-places in the open country, or in sparsely built up sections, he must know that travelers may cross the highway at any point, and must govern himself accordingly (cf. Gosling v. Gross, 66 Pa. Superior Ct. 304). In Watts v. Plymouth, 255 Pa. 185, 188, in considering the reciprocal duties of municipality and pedestrian on a highway the court said: "Pedestrians are not restricted

to the use of established street crossings when they attempt to pass from one side of the street to the other. They have a right to cross at whatever point they elect. But, since it is matter of common knowledge that crossings, where they exist, have been constructed for their exclusive accommodation and use, and that the individual pedestrian is less exposed to accident in using the crossing than when he attempts to cross the street elsewhere, it is only reasonable to expect him to use the crossing, except as he has sufficient ground to reject it. When without reasonable excuse he does reject it and adopt another way, he takes upon himself the risk of every danger arising out of municipal neglect that would have been avoided had he used the established crossing.''

It has been said that where there is no sidewalk for pedestrians along a highway, their rights on the paved roadway are equal to those of vehicles (King v. Brillhart, 271 Pa. 301, 304); though even then one may conduct himself as to be obviously guilty of contributory negligence, (cf. Virgilio v. Walker, 254 Pa. 241); while on the other hand, the circumstances of an accident, may require that question to be submitted to the jury (cf. Petrie v. Myers, 269 Pa. 134; McCann v. Sadowski, 287 Pa. 294; Warruna v. Dick, supra); as to the relative rights of the motorist and pedestrian on a sidewalk, see Hunter v. Pope, 289 Pa. 560; Reardon v. Smith, 298 Pa. 554. There is also a marked difference in the standard of care required at an intersection where traffic signals are maintained: Newman v. Protective etc. Co., 298 Pa. 509; or when a street car stops to receive or discharge passengers: Weaver v. Pickering, 279 Pa. 214. It is also settled that, even in a city with an abundance of street crossings, a pedestrian may cross a street at any point, directly or diagonally (Lamont v. Adams Express Company, 264 Pa. 17, 20; Anderson v. Wood, 264 Pa. 98), of course,

exercising a somewhat higher measure of care than must be observed at regular crossing places or in a section where there are none.

In the light of the rules, so illustrated, we come to this case. The plaintiff, seeing nothing approaching within three hundred and sixty feet—the top of the hill being the limit of her vision—started to walk across the twenty feet of concrete surface of the highway, and was run down when "over halfway across the road." She was not required to stop before starting to cross: Dugan v. Lyon, 41 Pa. Superior Ct. 52; Lorah v. Rinehart, 243 Pa. 231. She testified that she never saw what struck her, and she remained unconscious until the following evening. Her husband, who was some forty feet behind her, did not see the automobile until it struck her. A witness who was sitting on the front porch of the house opposite plaintiff's house, saw the automobile when it was about a hundred and fifty feet away from the plaintiff, and, we understand him to say, at that time the plaintiff was "about the middle of the roadway." This witness said there were no other automobiles in sight and nothing else on the highway.

Now, the appellee contends that plaintiff's contributory negligence should be declared as matter of law because there is no affirmative testimony that, after she had committed herself to the crossing (Twinn v. Noble 270 Pa. 500, 503) with nothing in sight, she continued to look first to the right and then to the left, and so on from one side to the other, during the short period she would occupy in crossing the twenty feet of concrete surface. We lay aside, as inapplicable, the rule, applied in built up sections of a community, that when a pedestrian crosses a street between crossings, or near one, he must exercise a greater measure of care than if using the crossing place provided; and we do so because there is no evidence of any crossing

place. The evidence is also sufficient to put a driver on such a highway on notice of that fact, requiring him so to conduct himself as not to encroach on the right of the pedestrian lawfully engaged in the act of crossing (cf. Kuehne v. Brown, 257 Pa. 37, 40). This plaintiff appears to have started to cross when there was no conflicting user of the highway apparent, near or far. It does not appear that she lingered on the highway, or in any way mis-used her right to be there. It cannot be said, then, as matter of law, that after having lawfully entered on the highway she was required to continue to look to the right and to the left instead of looking where she was walking while in the act of crossing; she could not close her eyes, but the law has not said how often she must look in such circumstances. It has been said that "the present condition of traffic is such that a pedestrian who fails to look in both directions before attempting to cross a two-way street between intersections must be held guilty of contributory negligence" (Weaver v. Pickering, 279 Pa. 214, 217), but even then for city traffic, it was not suggested that continuous looking to the right and left was required as matter of law; the court added that "the pedestrian must have due regard to the condition of the traffic......"

It was therefore the duty of the jury to determine whether plaintiff was guilty of contributory negligence: Chesney v. Read, 82 Pa. Superior Ct. 605; McKenzie v. Campbell, 84 ib. 112; Kurtz v. Tourison, 241 Pa. 425; Healy v. Shedaker, 264 Pa. 512; Flynn v. Moore, 88 Pa. Superior Ct. 361; Johnston v. Cheyney, 297 Pa. 199, 202; Robb v. Quaker City Cab Co., 283 Pa. 454; Weiss v. Pittsburgh Rwy. Co., supra, and that question was submitted to the jury in instructions not specifically challenged.

The judgment is reversed and the record is returned with instructions to enter judgment on the verdict.