Aaron, Appellant, *v.* Strausser.

Argued May 28, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Israel Krohn,* for appellant.

*A. Albert Gross,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, July 7, 1948:
This is an appeal from the court's refusal to grant plaintiff's motion for a new trial.

The verdict was in favor of the defendant in an action in trespass for injuries sustained when plaintiff was struck by a Buick Sedan driven by defendant. The accident occurred on May 15, 1946 between 6:30 and 7:00 P. M. on the North side of Northampton Street between Sixth and Seventh Streets, Easton, Pa.

According to plaintiff's witnesses, his wife, who was driving the automobile in which he was a passenger, parked the car on the north side of Northampton Street. While she remained at the wheel, plaintiff alighted from the right side of the car, walked to the rear, and stood there with his hand on the left fender looking to the right and to the left preparatory to crossing Northampton Street in order to get his "pick-up" truck on the other side, when Strausser, who was traveling west on Northampton Street, ran into him. There were no cars parked behind the car from which plaintiff alighted for at least 102 feet eastward. Plaintiff contends that he was standing about a foot away from the left rear fender and his body was in a diagonal position facing the opposite side of the street when he was struck on his left side by defendant's automobile. He estimated defendant's speed betwen 40 to 42 miles per hour. The momentum of the impact was so great that plaintiff's body was hurled forwards and struck for a second time before defendant's car could come to a stop.

Defendant is charged with negligence in operating his automobile at an excessive speed, in failing to have it under proper control, in failing to be watchful and to see the plaintiff in sufficient time to avoid striking him, in driving too closely to parked automobiles, and in otherwise failing to regard the rights and safety of the plaintiff.

Defendant denies liability and asserts that the plaintiff must have stepped directly into the path of his car and fallen across the right front fender. He admitted he saw neither plaintiff nor his parked car before the impact, nor did he know that he struck plaintiff until he first noticed him lying on his right front fender. A conflict in the evidence as to the nature and extent of plaintiff's injuries also exists.

The motion for a new trial filed by plaintiff is based on the contention that the verdict is against the weight of the evidence and on the trial judge's failure to grant

certain oral points requested by plaintiff's counsel at the close of the charge. Complaint is also made of the court's failure to instruct the jury that a pedestrian intending to cross a street between intersections has a right to rely on the exercise of reasonable care by drivers on the highway and to presume that ordinary care will be used to protect him from injury, and its failure to instruct the jury as to the evidentiary value of the admission by the defendant of his failure to see the plaintiff before he was struck. Defendant also avers that the charge on the question of negligence was incomplete, inadequate, and misleading.

The issue submitted to the jury was whether plaintiff was visible and whether the defendant in the exercise of due care should have observed him, or whether plaintiff negligently walked into defendant's car. In rendering its verdict, the jury concluded that plaintiff's contributory negligence barred his recovery.

The credibility of witnesses and the weight to be accorded their testimony are for the jury. Plaintiff asserts that he had five witnesses to corroborate his version as to the way in which the accident occurred, while defendant called no witnesses to contradict his testimony. Evidence which is uncontradicted is not necessarily to be accepted as true. Although direct evidence contradicting the testimony of witnesses may be lacking, the jury are not bound to accept it as true where it contains inherent improbabilities which, alone or in connection with other circumstances in evidence, furnish a reasonable ground for concluding that the testimony is not true. See *Hawkins v. Sauby*, 48 Minn. 69, 50 N. W. 1015; *Osbon v. Hartfiel*, 276 N. W. 270 (Minn.). "The average judgment of twelve jurymen of average sense, drawn, as they are, from all walks of life and impartially selected . . . is more likely to reach a practical result in sifting, weighing, rejecting, reconciling proof, and deciding facts than is that of the trained and technical reasoner or specialist whose mind runs in the groove of artificial

analysis and logic; for peradventure men do not usually get into trouble through logical processes, and logicians cannot always get them out of it": *Whiteaker v. Chicago, R. I. & RR Co.*, 252 Mo. 438, quoted with approval in *Century Indemnity Co. v. Carnes*, 138 S. W. 2d 555 (Texas).

In charging the jury as to the corresponding degree of care required by motorists and pedestrians who cross streets between intersections, the trial judge stated: "Where a pedestrian traverses a street between intersections, he must exercise a higher degree of care for his safety. Motorists are correspondingly held to a less degree of care. Where a pedestrian crosses a street at an intersection, motorists must be highly vigilant and maintain sufficient control of their cars to stop at the slightest notice of danger. It is the duty of a pedestrian to look before he undertakes a street crossing and to continue to look as he proceeds, and such duty is particularly incumbent on one who traverses a street in traffic at an unauthorized crossing." This is the law promulgated in *Fearn v. City of Philadelphia*, 320 Pa. 156, 182 A. 534.

The operator of a vehicle and a pedestrian are each under a duty to respect the lawful rights of the other. One exercising his lawful rights at a place where the exercise of like rights by others may put him in peril, is obliged to use such care for his own safety as a reasonably prudent man would employ under like circumstances. See *Poole v. Twentieth Century Operating Co.*, 121 N. J. L. 244, 1 A. 2d 389. Man's natural instinct of self-preservation will generally inspire in the pedestrian a due degree of caution for his own safety, when he is aware of the approach of an automobile and this the law will require him to exercise. Judge CARDOZO in *Knapp v. Barrett*, 216 N. Y. 226, said: "A wayfarer is not at liberty to close his eyes in crossing a city street. His duty is to use his eyes, and thus protect himself from danger. The law does not say how often he must look, or pre-

cisely how far, or when or from where. . . . The law does not even say that because he sees a wagon approaching, he must stop till it has passed. He may go forward unless it is close upon him; and whether he is negligent in going forward, will be a question for the jury."

The trial judge properly submitted the question of plaintiff's contributory negligence to the jury. He said: "It is not contributory negligence as a matter of law for a pedestrian to step out into a street or a highway at a place other than at regular intersections. The law on that situation has been well settled by cases heretofore decided by the Supreme Court of Pennsylvania, and it has been stated that a pedestrian cannot be held to be negligent by the Court as a matter of law when he attempts to cross a street between the regular crossings, but, in exercising this right, he must have due regard to the conditions of the traffic before he enters the cartway."

Whether or not a given state of facts constitutes contributory negligence as a matter of law or is a question of fact for the jury is determined by the circumstances of the case and whether or not reasonable minds might legitimately differ in their conclusions as to the existence of negligence. "Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or, in other words, where he takes no precaution at all for his own safety, it is usually a question for the court. Where he looks but does not see an approaching automobile, or, seeing one, erroneously misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury." *White v. Davis*, 103 Cal. App. 531, quoted with approval in *Reichle v. Hazie*, 71 Pac. 2d 849.

The jury could have decided that plaintiff's belief that he could cross the street in safety was reasonable; that he had the right to take into consideration the duty which the defendant owed him, as a pedestrian,

to slow down and give a timely signal. However, the jurors were not so persuaded by the evidence and we have no right to substitute our judgment for the judgment of the jury.

We find no reversible error in the charge of the trial judge. "It is well settled that a new trial will not be granted because of a mere conflict in testimony: [citing cases] or because the trial judge on the same facts would have arrived at a different conclusion [citing cases]": *Wilson v. Kallenbach*, 332 Pa. 253, 2 A. 2d 727. "Ordinarily we are not interested in, nor will we consider the weight of the evidence on the one side or the other, as shown by the record of a trial in the court below; that was a subject for the jury primarily, for the court below secondarily, and, in the absence of a clear abuse of discretion, is not, on appeal, a matter for review. . . . Hence, one who asserts that a trial judge abused his discretion in granting or refusing to grant a new trial, has a heavy burden to carry; too heavy, indeed, unless he can show a clear abuse of discretion by the court below." *Koch v. Imhof*, 315 Pa. 145, 172 A. 673.

The judgment is affirmed.