Rafferty v. Di John

*Lewis R. Long*, for plaintiff.

*Fackenthal, Teel & Danser*, for defendant.

WOODRING, J., July 18, 1956.—This case is before the court on plaintiff's motion to remove a compulsory nonsuit. The action is one of trespass by a pedestrian for damages for personal injuries. The accident occurred at 11 p.m. on December 6, 1953, at a point on the west side of Main Street in the City of Bethlehem, which said point is in the line of Garrison Street, if projected, which intersects with the east side of Main Street, but does not extend through Main Street.

Plaintiff had been visiting in the Sipple home, located on the west side of Main Street and just south of the place of accident. At the time of the accident it was raining and visibility was poor. Plaintiff testified that he could see a distance of 80 to 100 feet. Plaintiff left the Sipple home, Mr. and Mrs. Sipple standing in the doorway, walked in a northeastwardly direction to a point about two feet south of a service pole, looked to his left and to his right and then took two "hurried steps" in a slightly northeasterly direction, toward the Washington Hotel on the northeast corner of Garrison and Main Streets where plaintiff resided, and then for the first time saw the lights of defendant's automobile which was six to eight feet from plaintiff.

On the conclusion of plaintiff's side of the case the trial judge granted defendant's motion for a compulsory nonsuit on the grounds that plaintiff had convicted himself of contributory negligence as a matter of law. Plaintiff contends that the nonsuit should be removed for two principal reasons: (1) Defendant's conduct was wanton so that contributory negligence is no defense; and (2) plaintiff's conduct under all of the circumstances of the case was a question of fact

for the jury and not one of law for the court. We shall consider those two contentions.

An examination of plaintiff's complaint discloses that said complaint is based upon defendant's negligence and not upon any wanton conduct. The trial was confined to the question of negligence and contributory negligence. It is too late to contend for a new cause of action for the first time at the argument of motions after trial: Kramer v. Pittsburgh Coal Co., 341 Pa. 379, 19 A. 2d 362.

Plaintiff's present claim of wantonness is defective for another reason. Wantonness or wanton misconduct is characterized by a realization of the probability of injury to another and a reckless disregard of the consequences. Wantonness is something different from negligence, however gross. Wantonness exists where the danger to plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong: A. L. I. Restatement of the Law of Torts §482(1); Kasanovich v. George, 348 Pa. 199, 34 A. 2d 523; Rich v. Petersen Truck Lines, Inc., 357 Pa. 318, 53 A. 2d 725; Fitsko v. Gaughenbaugh, 363 Pa. 132, 69 A. 2d 76.

Under all the facts and circumstances of the instant case there is no evidence that defendant had notice of plaintiff's position of peril, or had reason to know, which notice is a prerequisite to the charge of wanton misconduct. Plaintiff's present claim of wantonness must be rejected.

A compulsory nonsuit is a drastic ruling and is justified only in a clear case, concerning whose facts the minds of reasonable men cannot honestly differ: Johnson v. Rulon, 363 Pa. 585, 70 A. 2d 325. In passing upon the trial judge's entry of the nonsuit, only

the facts favorable to plaintiff and the inferences to be deduced therefrom are to be considered unless, of course, plaintiff, by his own unmistakable testimony, has put himself out of court: Zanko v. Semmel, 379 Pa. 242, 108 A. 2d 700. In a negligence case a nonsuit can be entered only when it is inconceivable on any reasonable hypothesis that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after reviewing the evidence in the light most advantageous to plaintiff, could determine in his favor the controlling issues involved: Dissenting opinion, Jowett v. Pennsylvania Power Co., 383 Pa. 330, 118 A. 2d 452.

In accordance with the foregoing principles of law it must be assumed for the purpose of this opinion that defendant was negligent and that his negligence was a legal cause of the accident. Our chief inquiry is: "Does the testimony on behalf of plaintiff convict him of contributory negligence?" The well recognized rule to be applied is: Contributory negligence will be declared as a matter of law only where it is so clear that there is no room for fair and reasonable disagreement as to its existence: Szukics v. Ruch, 367 Pa. 646, 81 A. 2d 903. We must, therefore, examine the testimony to determine whether it establishes plaintiff's contributory negligence.

Plaintiff, James Rafferty, testified, beginning at page 9:

"Q. What did you do after you left the house?

"A. Well, I said goodbye to Mr. and Mrs. Sipple, who was in the doorway, and walked along the pavement to a point opposite the intersection of Garrison Street, near a telephone pole.

". . .

"Q. How far did you walk from the doorway to the point in the vicinity of this pole? How far would that be?

"A. I would say that would be approximately 10 or 15 feet.

"Q. Then what did you do?

"A. I looked to my left, like anybody should, and to my right, and back again, and proceeded across the street. I took approximately two steps off the curb.

"Q. Then what happened?

"A. All of a sudden a car came upon me. I didn't notice it until I was from here to that nearest chair away from it.

". . .

"A. (continued) : Somewhere between six and eight feet, I judged, when I seen him.

". . .

"Q. Now, you say you took two steps off the curb?

"A. Yes.

"Q. How far in distance did you travel before you were struck, with your two steps?

"A. About four or five feet.

". . .

"Q. Now, how was the weather when this accident happened?

"A. It was raining very hard. Visibility was very poor.

". . .

"Q. How far could you see?

"A. I would say between 80 and 100 feet.

". . .

"Q. And you took two steps, and then what happened?

"A. All of a sudden I seen these headlights at me, and I had no time to make a move at all, and I was hit."

On cross-examination plaintiff testified:

"Q. And so when you say you walked north on the street, did you hurry, walk rapidly?

"A. Yes.

"Q.. You walked rapidly because you didn't want to get wet?

"A. I guess that would be one of the reasons. I usually walk pretty fast anyway.

"Q. And then when you stepped off the curb you walked very fast?

"A. Yes, I walked two good steps.

"Q. But in this hurrying fashion? You were hurrying through the rain?

"A. I guess you would say that.

"Q. In that rapid fashion you took those two steps?

"A. Yes."

Plaintiff's witness, Edward Sipple, testified, in part, beginning at page 75:

"Q. Did you or Mr. Rafferty say anything at that place (the Sipple doorway)?

"A. We were talking there at the doorway. Then Mr. Rafferty said, 'I guess I will have to go home. It is getting late.' He went out the doorway and stopped on the pavement, turned around and said goodnight.

"Q. Which way did he walk?

"A. Diagonally across the street towards the Washington Hotel.

"Q. On the pavement how far did he walk?

"A. About two steps on the pavement, and turned around and said goodnight.

"Q. Then which way did he walk?

"A. Then he turned around and walked northeast, across the street. Well, he didn't go across the street. He went on the street, about two steps, and then he turned and stopped there, when he took the two steps, looked up and down the street. When he went to start out again I hollered, and he was too late.

". . .

"Q. Did Mr. Rafferty stop at the edge of the pavement before he walked out into the street?

"A. He took two steps off the pavement.

". . .

"Q. Did you see whether he looked in any direction?

"A. Yes, I did.

"Q. Which direction?

"A. He looked north and south.

"Q. Is it in the same order as you describe it?

"A. Yes sir.

"Q. Then what happened?

"A. Then out of nowhere this here car come, and Mr. Rafferty was hit . . .

". . .

"Q. How was the visibility? How far could you see?

"A. Very poor.

". . .

"A. (continued) : Oh, I would say about 100 feet."

On cross-examinaton Mr. Sipple testified:

"Q. Now, as I understood you to say, he took two steps off the curb and then stopped?

"A. Yes sir.

". . .

"Q. And then you said when he wanted to start again it was too late?

"A. That is right.

"Q. Because when he wanted to start again you saw the car within six or seven feet?

"A. Yes sir.

"Q. And within a moment the collision occurred?

"A. That is right, sir."

Plaintiff's witness, June M. Sipple, testified, in part, beginning at page 99:

"Q. Which way did he go after he left your front door?

"A. He walked down toward Union Street, north.

". . .

"Q. How far did he walk north?

"A. He walked down to right about the pole.

"Q. North or south of the pole?

"A. South of the pole.

"Q. Then what did he do?

"A. He looked up and down the street, and then he stepped out about two steps and said, 'so long', like that, and with that there was the car.

". . .

"Q. How many steps did he take before he got off the curb?

"A. About two steps.

". . .

"Q. And about how far from the curb in feet would you say he was when he was struck?

"A. About three or four feet."

On cross-examination Mrs. Sipple said:

"Q. And you saw him take the two steps?

"A. Yes.

"Q. And you saw him immediately struck, or thereupon you saw him struck by this automobile?

"A. Yes."

Plaintiff and Mrs. Sipple testified that plaintiff walked 15 or 16 feet from the doorway to the curb. That he then looked to his left, northwardly, and to his right, and that he then took two steps from the curb and was immediately struck. Plaintiff fixes the distance which he travelled from the curb at four to five feet, and Mrs. Sipple testified to three or four feet. When plaintiff arrived at that point he saw defendant's car, approaching from plaintiff's left side, at a distance of six or eight feet. Plaintiff admitted that he walked hurriedly because of the rain and because he was in the habit of walking rapidly. In our opinion it cannot be gainsaid that plaintiff walked into the path of defendant's oncoming car. The car's headlights were lit and even with the visibility limited

to 80 to 100 feet plaintiff could have, and under the circumstances should have, seen the approaching headlights at a distance much greater than the six to eight feet to which he testfies. When he and his witness say that plaintiff looked to his left and to his right, together with the circumstances that defendant's car was then six to eight feet from him compels the inference that if plaintiff looked, he looked inattentively or carelessly. He certainly failed to see the headlights of the approaching automobile which were at that moment, and within the range of admitted visibility, bearing down upon him.

Mr. Sipple's testimony differs in factual details with the foregoing, but not as to the ultimate result. According to Mr. Sipple's testimony plaintiff did not stop at the curb but continued on and took two steps on the street, and that he then turned and stopped there and looked up and down the street, "when he went to start out again I hollered, and he was too late". In other words, Mr. Sipple testified that plaintiff walked across the sidewalk, took two steps on the street, stopped, looked up and down the street and was then hit. In our opinion it matters little whether plaintiff stopped at the curb and looked for approaching vehicles and then stepped in the path of an imminently approaching one, or whether he heedlessly took two steps on the street and then looked and was immediately hit. In either event plaintiff by his inadvertence stepped in front of defendant's vehicle and was immediately struck. Such conduct constitutes contributory negligence and falls within the rule of Dando v. Brobst, 318 Pa. 325, 177 Atl. 831. That case resulted in verdicts and judgments for plaintiff. On appeal to the Supreme Court the judgments were reversed, and entered for defendants for the reason that "plaintiff was contributorily negligent as a matter of law."

That, too, was a pedestrian-motor vehicle case. Plaintiff testified: " 'I took one step with my right foot down off the curb, and put my left foot out to make another one when I was struck.' " There was one plus steps. In the instant case plaintiff took two steps. In the Dando case plaintiff was two or three feet from the curb at the time of the accident. In the instant case plaintiff was three or four feet from the curb, according to Mrs. Sipple's testimony, or four to five feet, according to plaintiff's testimony.

The Dando-Brobst case and the case at bar are distinguishable on their facts. Their striking similarity, however, lies in the fact that in each case plaintiff took one and one-half steps, or one plus steps, or two steps into the path of an approaching car and was immediately struck. Concerning the facts of the Dando-Brobst case the late Justice Drew said:

"Under these circumstances, plaintiff must inevitably have seen the car if she had looked, and if she saw nothing she could not have been looking. As we have repeatedly pointed out, it is vain for a person to say he looked when, in spite of what his eyes must have told him, he moved into the path of an approaching car or train by which he was immediately struck. (Citing cases).

"That plaintiff was under a duty to look before crossing cannot be doubted. The duty to look rests at all times upon everyone in the use of streets (Kauffman v. Nelson, 225 Pa. 174: Alexander v. Am. Express Co., 258 Pa. 378), and where one steps into a busy street and is immediately struck by a passing vehicle which he could have seen had he looked, he is barred by his own negligence:" (Citing cases).

Plaintiff argues that the case at bar differs from the Dando-Brobst case because of the limited visibility. It is true that Justice Drew's opinion contains:

"The accident occurred about one o'clock in the afternoon of a dry day, and it is not claimed that plaintiff's vision was in any way obscured." In the case at bar it was raining hard and visibility was reduced to 80 to 100 feet. Nevertheless, plaintiff was bound to use ordinary care under the circumstances. He had to avail himself of such visibility as did exist. This he did not do because he failed to see the lights of defendant's car until they were six to eight feet from him whereas, if he had been attentive, he should have seen the approaching lights when they were a sufficient distance to afford him an opportunity to avoid the accident.

We have studied the facts of the cases on which plaintiff relies. In each instance the facts are substantially different from the facts of our case in that plaintiff in the cited cases had advanced to the opposite curb or to the middle of the street or was standing with a pushcart in a line of traffic for a matter of minutes, etc.: Smith v. Wistar, 327 Pa. 419, 194 Atl. 486; Aaron v. Strausser, 360 Pa. 82, 59 A. 2d 910; Joannides v. Norris, 146 Pa. Superior Ct. 488, 23 A. 2d 53; Jowett v. Pennsylvania Power Co., supra; Zanko v. Semmel, supra; Szukics v. Ruch, supra.

Finally, plaintiff contends that even though his testimony might tend to convict him of contributory negligence, he is entitled to the best case made out by all of the testimony. Plaintiff argues that Mr. Sipple's testimony places plaintiff in the cartway a sufficient length of time to give notice to defendant of plaintiff's presence in the street and that because of the limited visibility, plaintiff was justified in committing himself to the street. We do not understand that to be the law. A plaintiff is bound by the way in which he made his own case, even though one of his witnesses made a better one for him. The law is well stated by Judge

Hirt in Snyder v. Union Paving Co., 170 Pa. Superior Ct. 112, 84 A. 2d 373:

"The testimony of plaintiff's witness Rinaldi who gave a somewhat different version of what occurred, did not convert the question of plaintiff's contributory negligence into one for the jury. Since the plaintiff's testimony shows that he was contributorily negligent we must take the case as he himself made it even though another witness may have done better for him. Levine v. Pittsburgh Wheel. Tr. Serv., Inc., 169 Pa. Superior Ct. 281, 82 A. 2d 77; Roche v. Pennsylvania Railroad Co., 169 Pa. Superior Ct. 48, 56, 82 A. 2d 332; Scull v. Epstein, 167 Pa. Superior Ct. 575, 579, 76 A. 2d 245."

We do not condone defendant's conduct. The duty of a motorist when approaching a street intersection is to have his car under such control that he can stop to avoid an accident. The test is not whether a pedestrian is within the intersection, but rather the fact of the intersection. Accepting the testimony of plaintiff and his witnesses, as we must for the purpose of the present motion, defendant was negligent. That negligence would have come to nought, however, if it had not been for the contributory negligence of plaintiff in hurriedly stepping from the curb into the path of the oncoming car. We are unanimous in ruling plaintiff guilty of contributory negligence as a matter of law. His motions must be denied.

### Order

And now, July 18, 1956, it is hereby adjudged, ordered and decreed that plaintiff's motion to take off the compulsory nonsuit be and the same is denied and the rule therefor discharged.