Rafferty, Appellant, v. DiJohn.

Argued April 16, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

reargument refused November 6, 1957.

*Lewis R. Long,* for appellant.

*Clyde W. Teel,* with him *Fackenthal, Teel, McGiffert & Danser,* for appellee.

OPINION PER CURIAM, September 30, 1957:
This case is affirmed on the able and comprehensive opinion of Judge CARLETON T. WOODRING, writing for the court below, as reported in 9 Pa. D. & C. 2d 415.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

It is said of exhausted desert travelers that as they plod over the scorched yellow earth, seeking water and shade, their hopes are sometimes stirred by what seems to be an oasis in the distance. Amid the sea of sand which surrounds them, this island of greenery with its palm trees and inevitable spring assures them that soon all will be well. However, as they eagerly stumble toward the oasis, it never gets closer. It seems to retreat with the ever-receding horizon, first to cheer, then to tantalize, and finally to torment and torture the travelers. The sad awakening finally comes to the wayfarers that what they have been following was not an oasis but a mirage.

There seems to be a mirage in the law of Pennsylvania which says: "In a case of this character, a nonsuit can be entered only when it is inconceivable, on any reasonable hypothesis, that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most advantageous to the

plaintiff, could determine in his favor the controlling issues involved."*

Counsel who have been nonsuited in the lower courts look in their law books for guidance as to what to do, and, like the exhausted desert wanderer, they are encouraged to appeal because they are told that if it is conceivable on any reasonable hypothesis at all that their case should have gone to the jury, the appellate court will lift the nonsuit and order the case for trial. And so, they appeal, and very often they find that what had seemed to them an oasis in the law books was only a mirage in the Sahara of jurisprudence. That is what the attorney for the appellant in this case learns today.

His client, a man weighing 200 pounds, was struck by an automobile travelling at such a high speed that it catapulted him up and forward for a distance of 48 feet. Even after striking the plaintiff, the offending car travelled 145 feet before it could come to a stop. This Court has affirmed the lower Court which entered an involuntary nonsuit on the theory that the plaintiff was guilty of contributory negligence because he was hit when he had taken only two steps into the street.

The facts are that on the night of December 6, 1953, James Rafferty at about 11 o'clock, after bidding good-bye to friends with whom he had been visiting, started across Main Street in the city of Bethlehem to reach his domicile on the other side of the street. Visibility was poor because of a rain which was so heavy that one witness said: "It was raining cats and dogs." Assuming that the density of the atmosphere was something less than that which would accompany a downpour of animals, the record reveals that visibility was still limited to about 80 feet.

---

* *Virgilio v. Walker*, 254 Pa. 241.

Before stepping down to the pavement the plaintiff looked to the left and then to the right. Assured that the coast was clear he started across the street. E. P. Sipple, whom he had been visiting that evening, testified that after the plaintiff Rafferty had committed himself to the street and had taken two steps he stopped to take a look and remained in this position for five or six seconds, when he was struck by an automobile coming from his left.

Since, in considering the lifting of a nonsuit, we are required to evaluate the record in the light most advantageous to the plaintiff, how can it be said that it is *inconceivable* on any reasonable hypothesis that a mind, desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, could conclude that the plaintiff was free of contributory negligence? What was the plaintiff to do? He stopped, he looked, and presumably he listened—and still he was hit. A witness testified that the defendant's car was travelling 40 miles per hour in a zone where speed was limited to 25 miles per hour. At 40 miles per hour, the defendant would be moving 60 to 75 feet per second. Thus, it is within the realm of possibility that when Mr. Rafferty looked to the left the car was not yet within the range of vision since visibility, because of the curtain of rain, was limited to 80 feet, but when he turned to the right the car broke through the curtain of invisibility and bore down on the plaintiff at such speed that he was unable to get out of the way.

Huddy in his work on Automobile Law says: "Rain or Snow Storms. Weather conditions such as a blinding snow or rain storm may under some circumstances excuse the failure of a pedestrian to see a motor vehicle until too late to avoid a collision therewith." Vol. 5-6, p. 159).

In the case of *Aaron v. Strausser,* 360 Pa. 82, 87, Justice MAXEY (later Chief Justice) said: "Whether or not a given state of facts constitutes contributory negligence as a matter of law or is a question of fact for the jury is determined by the circumstances of the case and whether or not reasonable minds might legitimately differ in their conclusions as to the existence of negligence . . . 'Where he [the pedestrian] looks but does not see an approaching automobile, or, seeing one, erroneously misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury . . .' The jury could have decided that plaintiff's belief that he could cross the street in safety was reasonable; that he had the right to take into consideration the duty which the defendant owed him, as a pedestrian, to slow down and give a timely signal." Is this authority also to become a mirage?

When an attorney is consulted by a prospective client and he reads such a statement in the books, is he not justified in advising his client that he has a jury case as to whether he was or was not guilty of contributory negligence?

It will be recalled that Mr. Sipple testified that after the plaintiff had taken two steps into the street he stopped and remained stationary for about five or six seconds and then was hit. It is possible from this testimony that after taking two steps into the street, the plaintiff heard noises of the defendant's car's approach or caught a glimpse of the approaching headlights and he remained fixed and immobile so that the motorist, seeing him, could avoid hitting him.

The Majority of this Court argues that the testimony of Mr. Sipple is not to be regarded because it makes out a better case for the plaintiff than the plaintiff makes out for himself. There is no rule in justice,

reason, and fair dealing that a plaintiff's case must depend on his testimony alone so far as contributory negligence is concerned. Often the plaintiff does not know what happened. Paralyzing fright just before the impact or unconsciousness following the impact may so freeze or shake memory that he cannot with accuracy relate just what he did or did not do at the crucial moment. Lookers-on sufficiently removed from the point of the crash as to be insulated from emotional shock may thus be in an infinitely superior position to narrate the drama which enveloped the plaintiff in disaster.

I would remove the nonsuit and let a jury decide whether James Rafferty should have waited until the rain stopped and all cars conceivably on Main Street should have passed by, or whether he, as a law-abiding citizen was not as much entitled to cross the street to reach his home and bed, as the motorist had to proceed to his destination at law-breaking speed while it was "raining cats and dogs" in Bethlehem.