Mary **THOMPSON, Administratrix of the Estate of George Edward Clemmer, Deceased, Appellant,**

v.

**PENNSYLVANIA POWER COMPANY, a corporation.**

No. 17155.

United States Court of Appeals Third Circuit.

Argued April 19, 1968.

Decided Sept. 19, 1968.

Rehearing Denied Nov. 19, 1968.

Louis C. Glasso, Pittsburgh, Pa., for appellant.

Bruce R. Martin, Pittsburgh, Pa., for appellee.

Before BIGGS, McLAUGHLIN and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

The plaintiff-appellant Thompson appeals from a directed verdict entered in favor of the defendant-appellee Pennsylvania Power Company (Power Co.). Mrs. Thompson brought suit in the court below seeking damages under the Pennsylvania Wrongful Death Act, 12 P.S. § 1601 and under the Pennsylvania Survival Act, 20 P.S. § 320.601. Jurisdiction of both claims is based on diversity of citizenship and statutory amount, 28 U.S.C. § 1332, and the law of Pennsylvania governs.

The relevant facts follow. On August 21, 1964, the wife of the decedent, George Clemmer, gave birth to twins. Later that afternoon Clemmer visited the Dutch Club in Beaver County, Pennsylvania. After some jubilant drinking Clemmer, his father-in-law and a friend set out to see a beaver dam located about a mile from the club. On the way to and

from the dam Clemmer was "acting like a fool", according to his father-in-law, leaping and "chinning" himself on the limbs of trees.

The area between the club and the supposed location of the dam [1] was partially cleared and partially wooded. Over this area were strung two electric wires owned and maintained by the Power Company. One of the wires was a neutral wire which carried virtually no voltage but the other wire, live and uninsulated, carried 4800 volts of electricity. It appears that at some time prior to the accident and for a reason not appearing from the record both wires had sagged to within 8 to 10 feet of the ground. When Clemmer passed beneath the wires, he shouted, "Look here!" to his father-in-law, leaped up, grasped one of the wires in each hand and was electrocuted instantly.

It is undisputed that the poles supporting the wires were 276 feet apart, that the live wire had remained energized despite the fact that the last customer serviced by it had ceased to use it in 1950, that the wires were blackened due to exposure, and that the last visual inspection made by the Power Co. had been made during the week of September 26, 1960, nearly four years prior to the accident.

■ At the close of the appellant's case the Power Co. moved for a directed verdict. This was denied. At the close of all the testimony the Power Co. again moved for a directed verdict. The court reserved decision on the motion. After the jury was unable to reach a decision, a directed verdict was entered in favor of the Power Co. on the grounds that Clemmer was contributorily negligent as a matter of law and that there was insufficient evidence from which reasonably the jury could have found the Power Co. guilty of wanton misconduct.[2] Thompson has appealed.

The appeal is based on two grounds: first, that the evidence presented on the issue of Clemmer's contributory negligence did not justify a directed verdict. Mrs. Thompson's second contention is that the trial judge was in error in refusing to charge the jury on the issue of the alleged wanton misconduct of the Power Co. We conclude that judgment was properly entered in favor of the Power Co.

The negligence of the Power Co. in the case at bar is in large part based on the following contentions: the energized line should have been de-energized and the poles supporting the line should have been placed closer together than 276 feet in order to prevent the lines from sagging.[3]

■ In light of our disposition of the case at bar we shall assume that the trial judge was correct in concluding that there was sufficient testimony from which the Power Co. could be held to have been negligent. See Daltry v. Media Elec. Light, Heat and Power Co., 208 Pa. 403, 410, 57 A. 833, 836 (1904). In this regard we note that Pennsylvania imposes upon a supplier of electricity the highest degree of care. Skoda v. West Penn Power Co., 411 Pa. 323, 191 A.2d 822 (1963).[4]

■ We turn to the question of contributory negligence. In Haertel v.

1. The dam actually had been washed out before the occurrence of the accident.

2. In Pennsylvania one who is guilty of contributory negligence, however slight, is barred from recovery against a negligent defendant, unless the defendant's negligence constitutes wanton misconduct. Kasanovich v. George, 348 Pa. 199, 34 A. 2d 523 (1943).

3. Although it appears that the wires were not insulated, this condition was not alleged to be a negligent one and no evidence was presented to prove it to be such. See Jowett v. Pennsylvania Power Company, 383 Pa. 330, 118 A.2d 452 (1955).

4. Although it is arguable that Clemmer was a trespasser, in the light of our disposition of the case, we shall assume that he was a gratuitous licensee and thus deserving of the highest duty of care on the part of the Power Company. Markovich v. Jefferson Coal & Coke Corp., 146 Pa. Super. 108, 110–112, 22 A.2d 65, 66–67 (1941); Daltry v. Media Elec. Light, Heat & Power Co., supra.

Penna. Light & Power Co., 219 Pa. 640, 643, 69 A. 282 (1908), the Supreme Court of Pennsylvania stated: "While electric companies are bound to use the highest degree of care practicable to avoid injury to everyone who may be in lawful proximity to their wires, yet the ordinary person is held to know that danger attends contact with electric wires, and it is his duty to avoid them so far as he may. If one heedlessly brings himself in contact with such a wire, and is injured in consequence, his imprudence must be regarded as a contributory cause, and will prevent a recovery." At 219 Pa. 642, 69 A. at 282, it was stated: "How he came in contact with the wire is pure speculation, with a strong implication from the circumstances that it was occasioned by his own imprudence." In the case at bar the Power Co. contends that the decedent came in contact with the deadly wires by reason of his own imprudence. See also Rank v. Metro-politan Edison Co., 370 Pa. 107, 87 A.2d 198, 55 A.L.R.2d 119 (1952). Could the jury have reached the opposite conclusion? [5] We cannot see how. We agree with the court below that decedent Clemmer was contributorily negligent as a matter of law. Rank v. Metropolitan Edison Co., 370 Pa. 107, 87 A.2d 198 (1952); Everett v. Citizens' Gas & Electric Co., 228 Pa. 241, 77 A. 460 (1910).[6]

■ Finally, as we have stated, Thompson contends that the court below erred in not charging the jury on the issue of the liability of the Power Co. for wanton misconduct.[7] Wanton misconduct has been defined by the Pennsylvania Supreme Court to mean " 'that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference

5. The only evidence we find in the record which could credibly tend to support such a position is that the sagging wire was blackened due to exposure and consequently arguably lulled Clemmer into believing the wires to be safe, either because they appeared to be insulated or because their condition would not register the appropriate warning signal to Clemmer's mind. We think this evidence to be insufficient to avoid a finding of contributory negligence as a matter of law. See Haertel v. Penna. Light & Power Co., supra.

Although we recognize that in reviewing the record the testimony must be accorded the view most favorable to Thompson, we do not believe that the evidence alleged to have disarmed Clemmer into believing the wires safe can be viewed apart from the other testimony by Thompson's own witnesses regarding the appearance of the wires.

Southall, decedent's father-in-law, in describing the accident stated that one "couldn't help seeing" the low hanging wires. Transcript, p. 93.

Ira Rummell, who hunted and fished in the neighborhood, testified on redirect examination that "any wire can be a dangerous wire" "if you are using a metal flyrod" and on recross-examination he characterized jumping up and touching the wires in question as "crazy" and some-thing he would not have done. Transcript, pp. 87–88.

6. Thompson relies on the decision in Brillhart v. Edison Light & Power Co., 368 Pa. 307, 82 A.2d 44 (1951) to support her position that contributory negligence was a question for the jury in the circumstances at bar. The following was said of Brillhart v. Edison Light and Power Co., supra: "[In Brillhart] [t]here was testimony that these wires because of shrubbery and trees were not visible where the men were working and there was 'not a shred of evidence' that the decedent * * * should have seen the high voltage wires. Furthermore the decedent was engaged [in Brillhart] in the only method of carrying out the installation of the pump and he did not, like the decedent in the instant case, voluntarily interfere with or trespass upon the defendant's facilities." Rank v. Metropolitan Edison Co., 370 Pa. at 115, 87 A. 2d at 202.

7. Because of our disposition of this contention we need not consider nor decide whether Thompson's failure to allege wanton misconduct should be a bar to her raising it in a request for a charge to the jury and on this appeal. However, see Rafferty v. DiJohn, 9 Pa.Dist. & Co.R. 2d 415, 417 (1956), affirmed per curiam 390 Pa. 123, 135 A.2d 375 (1957).

**92**

to the consequences * * *.' Prosser, Torts § 33 at 151 (2d ed. 1955)." Evans v. Philadelphia Trans. Co., 418 Pa. 567, 574, 212 A.2d 440, 443 (1965). See also. Goss v. Baltimore & Ohio R.R. Co., 355 F.2d 649 (3 Cir. 1966); Moss v. Reading Co., 418 Pa. 598, 212 A.2d 226 (1965); Kasanovich v. George, 348 Pa. 199, 34 A.2d 523 (1943).

■ We think, taking the evidence in the light most favorable to Thompson, that there was insufficient evidence to justify a charge to the jury on wanton misconduct. If there is to be any substance to a distinction between negligent conduct in breach of the highest duty of care and wanton misconduct as it relates to the activity of a utility company, the latter standard must require conduct which exceeds negligence in its reckless nature. Evans v. Philadelphia Trans. Co., supra. Kasanovich v. George, supra. We conclude that such a showing has not been made in the case at bar. See Weir v. Haverford Electric Co., 221 Pa. 611, 616–617, 70 A. 874, 876 (1908). A holding to the contrary would ignore the distinction, created by the courts of Pennsylvania, between negligence and wanton misconduct and effectively eliminate the defense of contributory negligence when asserted by a utility company. Whatever may be the merit of requiring such companies to be insurers of the safety of those who come into contact, either accidentally or intentionally, with electrical facilities, it is not the law of Pennsylvania. See Skoda v. West Penn Power Co., supra, 411 Pa. at 328, 191 A.2d at 825. We have been unable to find any Pennsylvania decision that supports Thompson's contention that a charge on wanton misconduct would be appropriate under the circumstances at bar. In fact, such a charge would be inappropriate.

Other issues raised by the appellant do not require discussion.

1. Crane v. Neal, 389 Pa. 329, 332–333, 132 A.2d 675, 677 (1957).

2. Restatement (Second) of Torts, §§ 500, 501(1).

Accordingly, the judgment will be affirmed.

FREEDMAN, Circuit Judge (dissenting).

I find myself unable to accept the conclusion that a jury could not have found the power company guilty of wanton misconduct. Although Pennsylvania has vigorously enforced its ancient rule that the slightest negligence by a plaintiff which contributes to his injury is an absolute and complete bar to recovery,[1] its Supreme Court in the leading case of Kasanovich v. George, 348 Pa. 199, 34 A.2d 523 (1943), adopted the doctrine that plaintiff's contributory negligence is not a bar to his recovery if the defendant is guilty of wanton misconduct. The principle has now been applied in numerous Pennsylvania cases and has received the approval of the American Law Institute[2] and of Professor Prosser in his leading work on torts.[3]

In Evans v. Philadelphia Transportation Co., 418 Pa. 567, 574, 212 A.2d 440, 443 (1965), the Supreme Court of Pennsylvania distinguished between willful misconduct in which defendant must have had some actual prior knowledge of the trespasser's peril, and wanton misconduct in which the defendant is consciously indifferent to the possible risk and quoted with approval Prosser's description of wanton misconduct: "Wanton misconduct * * * 'means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences * * *.' Prosser, Torts § 33 at 151 (2d ed. 1955)."

Here the power company continued to maintain live uninsulated wires carrying

3. Prosser, Law of Torts, § 34, pp. 187–89; § 64, pp. 436–37 (3d ed. 1964); see also 2 Harper & James, Law of Torts § 22.6 (1956).

4800 volts of electricity for fourteen years after the last customer serviced by the wires had ceased to use them. It had not made a visual inspection of the wires for almost four years prior to the accident and they were blackened from exposure. A witness testified that at the time of the accident the wires were about eight to ten feet above the ground,[4] a condition which another witness had observed in July of 1964, two months prior to the accident, and which existed when he had observed the wires from time to time over a period of many years. The power company should have known that children and adults were frequently in the vicinity of the wires as they went to fish and play nearby. There was evidence that the continued maintenance of the wires in their condition at the time of the accident violated the National Electrical Safety Code published by the Bureau of Standards. The decedent was six feet two inches tall and if the wires had sagged to eight feet above the ground, they would not be far above his outstretched arms.

The power company offered no explanation for its failure to de-energize the abandoned line which the evidence indicated could have been done in a matter of minutes with no difficulty. Thus the power company maintained an uninsulated abandoned line for over fourteen years and never took the simple precaution of de-energizing it, but maintained it in its lethal state in an area where it knew children and adults passed by, and did not even inspect the line for the period of over four years preceding the fatal accident.

It is dangerous enough to have uninsulated power lines of high voltage in country areas, but if they are maintained, surely periodic inspections should be frequent and if they are abandoned the simple precaution of de-energizing the wires should not be neglected for years, during which, unused and unattended, they inevitably sag and reach close to the ground, and especially is this so when they are situated in an area where human beings may easily come in contact with them.

In these circumstances it seems to me that the conclusion could rationally be reached that a risk existed of which the company must be taken to have been aware and which it disregarded by intentional conduct of an unreasonable character out of a conscious indifference to its consequences. A conscious decision not to bother with the inspection of wires and to leave them live and uninsulated, although abandoned for a long time, is intentional conduct of an unreasonable character which under the circumstances the jury would have a right to find constituted wanton misconduct.

I therefore believe it was error for the court to refuse to submit the question of wanton misconduct to the jury and to charge that if it found there was wanton misconduct plaintiff would not be barred by any contributory negligence.

Plaintiff requested a charge to the jury to this effect and the incomplete record does not show that it was refused because the doctrine of willful misconduct had not been expressly pleaded. Unless more is shown to create a bar for failure to plead, we would normally apply the liberal right to amend which Rule 15 of the Federal Rules of Civil Procedure provides.

I therefore would reverse the judgment and remand for a new trial and respectfully dissent from the affirmance of the judgment for defendant.

4. Of course, we must accept all evidence favorable to the plaintiff and reject all evidence harmful to his case since we are testing a judgment entered by the court after the jury had disagreed. See Lescenznski v. Pittsburgh Railways Co., 409 Pa. 102, 105, 185 A.2d 538, 539 (1962).