Haney et al. *v.* Bobish et al., Appellant.

Argued April 19, 1943.   Before KELLER, P. J., BALD-
RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and
RENO, JJ.

*Lawrence M. Sebring,* for appellant.

*Richard P. Steward,* for appellees.

OPINION BY STADTFELD, J., July 21, 1943:

This case arose out of an action of trespass instituted
by the parents and by the father as guardian of a four
year old minor child, Robert Haney, for personal in-
juries to the child sustained when he was struck by
an automobile driven by Stella Bobish, appellant, the
co-defendant with her brother, the owner of the auto,
in the court below.   The case was tried before a jury

and resulted in a verdict of $356.80 in favor of the parents, which sum represented the amount of the hospital and doctor bills. The record does not disclose any verdict in favor of the minor plaintiff.

Eighth Street, in the Borough of Monaca, Pennsylvania, runs in a general direction east and west. Spruce Alley runs in a general north and south direction and opens into the south side of Eighth Street at right angles. At about 6:30 P.M. on March 27, 1941, two negro youths drove a truck north on Spruce Alley and parked it against a fence on the left hand side of the alley, about twenty-five feet south of Eighth Street. About this time the child, Robert Haney, together with a cousin, a boy of fifteen, and two other boys younger than the cousin, but older than the Haney boy, were playing marbles in the alley at the side of the parked truck where traffic would have to pass. About this time Stella Bobish, the appellant and co-defendant below, was driving her mother and sister in an auto owned by her brother westward on Eighth Street and she turned left and southward into the mouth of Spruce Alley. The alley was a little up grade and she drove to the left of the truck to pass it. A warning of her approach was given by one of the boys, which caused them to move to the east side of the alley along the fence, except the Haney boy, who did not succeed in making his escape. The left front wheel of the car passed over his leg, breaking the femur bone, as he was hunched over playing marbles with his back towards the direction of the approaching auto. The auto was stopped instantly and the child removed. The defendant's testimony indicated that the child had moved to the fence with the other boys and then suddenly stepped from his position at the fence into the alley against the left front fender of the auto and the front wheel passed over his foot and the auto was then stopped within three feet. Motion for judgment n.o.v.

on behalf of Joseph Bobish was granted by the court below and refused as to Stella Bobish, from which refusal this appeal was taken. Appellant assigns as error the refusal of the motion for binding instructions and the motion for judgment n.o.v., her exceptions thereto, inter alia, being that: (1) Under the pleadings and proof the verdict cannot be sustained as to the defendant, Stella Bobish. (2) The verdict is contrary to the allegations of negligence contained in the plaintiff's statement of claim in that the negligence charged against Stella Bobish consisted of driving or operating the automobile on her left hand side of the public road at the time of the accident, and in proceeding at such a speed as to be unable to halt the said automobile before it struck the plaintiff, Robert Haney. (3) A separate and distinct act of negligence against the defendant, Joseph Bobish, was alleged in the pleading, and separate and distinct negligence against Stella Bobish in her pleadings, and there was no allegation in the plaintiff's statement that the negligence charged against either defendant was concurrent with the negligence laid against the other defendant, nor was there any allegation as to which act of negligence of either defendant was the proximate cause of the injury. (4) The overwhelming weight of the evidence was that Stella Bobish was not responsible in any manner for the injury to the minor, Robert Haney, and the verdict of the jury is capricious and indefensible.

A review of the testimony, the evidence from which the jury inferred negligence on the part of the appellant, will be helpful at this point. Jesse Mabin, one of the negro youths who had driven the truck into the alley and parked it against the fence on the wrong side of the alley, and was a bystander and the only disinterested witness in the case, testified as follows: "Q. Tell the court and jury what happened there? A. Well, when she came around the street, the boys were playing

marbles there, and I was standing beside the truck; they was playing marbles, and I looked over and I seen one of the boys was lying down in front of the car, that was under the wheel, and I didn't go over to where he was down; I stood by the truck. Q. Did the car blow the horn? A. I didn't hear none. Q. Did the boy have his back towards the car as it came around the corner? A. I would say he did. Q. Just a minute; are you sure they weren't lined up along the fence? A. I am sure of that. They was playing; some of them was down on their hands and knees. Q. They were in a huddle, weren't they? A. Some were standing up and some on their hands and knees. Q. You didn't see how he got under that automobile, did you? A. Well, he got hit. Q. Well now, you didn't see him get hit? A. I was standing right there. Q. Well, now, let's get it: Do you mean to tell this jury that you did see the automobile come against the body of this boy? A. Why, yes. Q. Well, then, all the children but one were standing along the fence, and the one was that little boy that got hit? A. He was standing out from the fence; he wasn't up by the side of the fence. Q. He had never left the place in the road, where he had been playing? A. No, I guess he never had the chance to; it came and hit him there. Q. She didn't stop? A. Not until she hit the kid. Q. Did she or didn't she slacken her speed as she came around that corner? A. She wasn't coming real fast, because when she seen the truck there, she couldn't have been coming very fast, she had to stop; she had to slow down, when she seen the kids was there. Q. About how far away from this child that was hit was that? A. What do you mean? Q. You say the automobile slowed down? A. Yes. Q. And, it kept on going? A. Yes. Q. About how far did it go, after it slowed down, before it hit this child? A. Well, to me, it looked like it got up on him before it started to slow down. Q. Let me ask him something.

Didn't you say this girl slowed down right at the mouth of the alley, before she passed you? A. No. Q. What? A. No. Q. Did she slow down at all, between the mouth of the alley and where she reached you? A. Why, no. Q. What? A. She didn't slow down until she got around the alley and got on top of the kids. Q. What part of her automobile struck him? A. I will say the bumper on the side where the steering wheel is. Q. Did the wheel run over the boy, do you know? A. It didn't run over him; it just pinned him under it."

Edwin Krager, cousin of Robert Haney and one of the group playing marbles testified as follows: "Q. What do you mean by 'on the ground'; show us what position you were in? A. Well, he was facing towards me and the car was in back of him; he was facing me. Q. In what position was he; was he standing like you are now or was he crouched down somehow? A. He was crouching down. Q. Where was he? A. Like this here (indicating). Q. To shoot a marble? A. Yes. Q. Did you have your face towards the automobile? A. Yes. Q. Did you see it coming? A. No. Q. Why? A. Because I was watching when it was his turn to shoot. Q. Where were you when the automobile hit Bobby? A. I was on the side of the fence. Q. Why did you get up there. A. Because I got—some kid hollered, 'Here comes a car,' and I got all excited; so, I jumped aside, and Bobby didn't have a chance, and the bumper bumped and he fell. Q. Wait a minute. How far from the fence was Bobby when the car hit him? A. He was about that far (indicating). Q. Is that the same spot he was in when you jumped over towards the fence? A. Yes. Q. When the other boy hollered 'here comes a car,' did Bobby jump over towards the fence? A. He tried to, but it was too late; he was under the wheel." He testified also that no horn was blown by the appellant.

Another witness called by the plaintiffs, Stephen

I. Lawrence, testified that he drove Robert Haney and the appellant to the hospital in her automobile and that he went through a red light when the brakes on the auto failed to respond to his efforts to halt the auto.

As for the evidence for the defense, Harry Sherman testified that he inspected the automobile in question on February 1, 1941, and that he tested the brakes at the time and found them in good condition. There was testimony that the Chief of Police of Monaca tested the brakes after the accident and that there was nothing declared wrong with them. The appellant testified that as she rounded the corner from Eighth Street into the alley she shifted into second gear; that she saw the children and blew the horn; that she proceeded to the left of the parked truck slowly and carefully in low gear; that all of the children were up along the fence; that Robert Haney darted out in front of her car; and that she jammed the brakes on and stopped, just after the front left wheel had gone over the right leg of the child. The mother and sister of the appellant, occupants of the auto at that time, testified substantially in the same vein as the appellant.

Although the testimony on behalf of the plaintiff was vague and apparently contradictory in places, there were sufficient facts stated to permit the submission of the case to the jury for its determination as to whether the appellant had used due care under the circumstances and as to whether she had sufficient control of the automobile to stop within the proper distance to avoid hitting the child.

The testimony and the reasonable inferences therefrom must, in this appeal, be considered in the light most favorable to the plaintiff, and, therefore, we must accept as correct the testimony on behalf of the appellees that the child was struck before he had an opportunity to escape from his original position in the alley to a place of safety alongside the fence. It

is the duty of the driver of a motor vehicle at all times to have his vehicle under such control that it may be stopped before injury results to any person in any situation that is reasonably likely to arise under the circumstances. *Morris* v. *Kauffman,* 120 Pa. Superior Ct. 515, 518, 182 A. 758; *Miller* v. *Carey,* 117 Pa. Superior Ct. 218, 225, 177 A. 511. Particularly is this true when the driver's view is obstructed by a curve or corner, for he is bound to anticipate that some hazard either to himself or others lies immediately beyond his range of vision. *Miller* v. *Carey,* supra. He is bound to anticipate that children may be playing upon the street, and the duty is upon him to exercise due care in looking out for them. As respects children, his duty requires that his vehicle be under such control that he can stop it in a reasonable time in an emergency. *McMillen* v. *Strathmann,* 264 Pa. 13, 107 A. 332. Ordinary care on the part of the driver requires that he give due consideration to the fact that children do not ordinarily exercise the same degree of caution for their own safety as normally adults do *(Hook* v. *Bell Telephone Co.,* 81 Pa. Superior Ct. 120, 122), which places a duty on the driver to exercise more vigilance and caution than may be necessary in the case of an adult. *Silberstein* v. *Showell,* 267 Pa. 298, 109 A. 701. There can, therefore, be no quarrel with the finding of the jury that the appellant was negligent in driving around the corner and to the left of the truck, without having sufficient control of the auto to stop it before hitting the child who must have been visible. Plaintiffs, therefore, did prove the charge of negligence in their statement of claim that appellant was negligent in passing to the left of the parked truck, for the appellant was obliged to await a clear passage way before proceeding.

As to the plaintiffs allegation that the appellant "proceeded at such a speed as to be unable to halt the

said automobile before it struck Plaintiff Robert Haney," there is no contention by the plaintiffs that the appellant operated her auto at an excessive rate of miles per hour, but rather that she drove at a speed excessive under the circumstances, so that she could not halt the auto before it struck the child. There was sufficient evidence adduced to support that charge, under the rules set forth in the preceding paragraph.

As to appellant's third assignment of error, the plaintiffs did not have to allege concurrent negligence. There was a separate averment of negligence as to each of the defendants below, only one of which was proved. The assignments of error are overruled and the judgment is affirmed.