Zanko, Admr., Appellant, *v.* Semmel.

Submitted June 2, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*George J. Joseph* and *Bernard B. Naef,* for appellant.

*Harold A. Butz* and *Butz, Hudders, Tallman & Rupp,* for appellees.

Opinion by Mr. Justice Arnold, November 8, 1954:

In his lifetime the decedent, Fritsch, instituted this action of trespass for damages for injuries resulting from being run over by the bulldozer owned by one of the defendants, and operated by the other as his employe. Prior to trial he died and appellant-administrator was substituted as plaintiff. Plaintiff appeals from the refusal to take off the compulsory nonsuit entered by the court below.

There being no one who actually saw the occurrence, plaintiff was left primarily and almost wholly to proving his case by calling the defendants as on cross-examination, and depends on certain inferences to establish the negligence charged.

Viewed in a light most favorable to plaintiff, the facts are:

On the day in question and prior thereto the decedent and others as employes of the contractor had been clearing brush, weeds and saplings from a plot of ground. His hours of employment were 9:00 A.M. to 4:30 P.M.

At approximately 4:45 P.M. defendants (sub-contractor and his employe) arrived at the plot with their bulldozer to do heavier work of clearing. Decedent advised them as to matters regarding the work to be performed by them, and then returned to his own duties after stating that he would be quitting in fifteen minutes. Decedent's employer came to the site at approximately 5:00 P.M., and in answer to his inquiry defendant-employe stated that he did not know where decedent then was but assumed he had left. Defendant-employe continued with his work and a short time later, after having gone in a reverse direction, looked forward and discovered that he had run the bulldozer

over decedent, who was writhing and moaning, face downward on the ground.

When the police arrived at the scene the bulldozer and Fritsch's body were approximately 25 feet from the edge of the plot—the extreme opposite edge of the field from the Jefferson Street edge upon which the ambulance was travelling. Thus the police ambulance drove across virtually the entire field.

In *Potter Title and Trust Company v. Young*, 367 Pa. 239, 244, 80 A. 2d 76, our present Chief Justice said: "The distinction that has thus been established, therefore, is that, while the possessor of the premises is not generally liable to a gratuitous licensee, in the absence of willful or wanton injury, for an accident due merely to existent conditions upon the premises, he *is* liable for injury occasioned by any affirmative or 'active' negligence on his part in connection with activities conducted on the premises. A large number of cases in the several jurisdictions, illustrating this distinction, are to be found in 49 A.L.R. 778 et seq. and 156 A.L.R. 1226 et seq. Applying this principle, it is clear that, if Jones had been injured as the result of a dangerous or unsafe condition of the highway under repair, he would not, as a mere licensee, have been entitled to recover for the injury thus sustained; but, since his injury resulted from 'active' negligence in the operation of a moving vehicle, and since the duty owed him under such circumstances was not merely to refrain from willful or wanton conduct but to exercise ordinary care, recovery may be had. (See Yamauchi v. O'Neill, 38 Cal. App. 2d 703, 102 P. 2d 365). Whether the truck was in fact operated negligently was for the determination of the jury, and their resolution of that question in favor of plaintiff was justified by the evidence." In the same case the then Justice STERN

cited the late Chief Justice MAXEY, who stated, in *Caulton v. Eyre & Co., Inc.,* 330 Pa. 385, 388, 199 A. 136: "Backing a motor vehicle any distance unless the driver is absolutely certain there is no person in his pathway involves a risk, as countless accidents on sidewalks and elsewhere, resulting from that practice attest . . ."

Thus it was unimportant whether or not the decedent was a licensee, as defendant had no exclusive right to the use of the premises.

The defendant-employe, called on cross-examination, testified that this portion of the land was grown up with weeds and brush of a height of some five feet; that he looked as he backed up and did not see the decedent and could not have seen him. He testified that the seat of the bulldozer, which was at the rear, was about five feet above the ground, and that his head would thus be about eight feet above the surface. He could see, directly downward, any point four feet beyond the bulldozer.

Proof of the general situation and circumstances, if it puts the stamp of improbability or incredibility on the words of the defendant called on cross-examination, is sufficient to overcome his testimony: *Matthews v. Derencin,* 360 Pa. 349, 354, 62 A. 2d 6; *Boyle v. Pennsylvania Railroad Company,* 346 Pa. 602, 607, 31 A. 2d 89; *Alfandre v. Bream,* 135 Pa. Superior Ct. 538, 542, 7 A. 2d 502. And such proof is sufficient to convict a tortfeasor of negligence: *Mitchell v. Stolze,* 375 Pa. 296, 298, 100 A. 2d 477.

In granting the nonsuit the court below determined that the defendant-employe having testified that he "looked over the course his bulldozer was about to pursue," which was uncontradicted, he had done all that was required of him and had no reason to know

that the decedent was still on the premises. It thus declared inapplicable the rule that "a man will not be heard to say he has looked, where if he had looked, he must have seen what was plainly visible." (See *Guy v. Lane,* 345 Pa. 40, 43, 26 A. 2d 327; *Martino v. Adourian,* 360 Pa. 580, 583, 63 A. 2d 12).

The decedent was lawfully upon the premises and was owed the consequent duty of reasonable care by the defendant. A jury would be well warranted in finding that the defendants violated such duty, and in disbelieving the defendant-employe's testimony that he looked but could not see the decedent. In view of the absence of weeds or other vegetable matter on his body, the jury could have found that the decedent was standing when struck, and that defendant-employe could have seen had he looked. There was nothing at the rear of the bulldozer to obstruct the driver's vision, and if there were, he had no right to back where he could not see, i.e. take a leap in the dark: *Potter Title and Trust Company v. Young,* supra. Cf. *Haney v. Bobish,* 153 Pa. Superior Ct. 191, 197, 33 A. 2d 268, where it was held: "It is the duty of the driver of a motor vehicle at all times to have his vehicle under such control that it may be stopped before injury results to any person in any situation that is reasonably likely to arise under the circumstances . . . Particularly is this true when the driver's view is obstructed by a curve or corner, for he is bound to anticipate that some hazard either to himself or others lies immediately beyond his range of vision."

"In passing upon the lower court's entry of the nonsuit, only the facts favorable to the plaintiff and the inferences to be deduced therefrom are to be considered unless, of course, the plaintiff, by his own unmistakable testimony, put himself out of court. *It is*

*only in a clear case, concerning whose facts the minds of reasonable men cannot honestly differ, that the entry of a compulsory nonsuit is ever justified . . ."* Johnson v. Rulon, 363 Pa. 585, 586, 70 A. 2d 325. (Italics supplied).

The testimony here was such as reasonable men could differ in regard thereto, and the case was for the jury.

Judgment reversed with a venire.

Mr. Justice BELL dissents.