John C. HURLOW, Appellant–Plaintiff,

v.

MANAGING PARTNERS, INC. d/b/a Mars Nightclub, Appellee–Defendant.

No. 53A04–0011–CV–479.

Court of Appeals of Indiana.

Oct. 2, 2001.

Peter L. Obremskey, Todd J. Meyer, Robert J. Donahue, Parr Richey Obremskey & Morton, Lebanon, IN, Attorneys for Appellant.

Shannon L. Robinson, Kelley, Belcher & Brown, Bloomington, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-plaintiff John C. Hurlow appeals the trial court's grant of judgment on the evidence in favor of appellee-defendant Managing Partners, Inc. d/b/a Mars Nightclub (Mars Nightclub) on Hurlow's respondeat superior claim. Specifically, Hurlow contends that the trial court erred in finding that there was no evidence that a Mars Nightclub employee was acting within the scope of his employment when he injured Hurlow.

## FACTS

The facts most favorable to Hurlow show that his friend, Chris Maxwell, worked as a bartender for Mars Nightclub. Some time in the spring or early summer of 1996, Maxwell overheard or participated in a conversation between two Mars Nightclub employees, regarding pigeons in the exhaust vents. Subsequently, on his own initiative, Maxwell brought in an air-powered pellet gun to shoot the pigeons if necessary. Maxwell brought in the pellet gun despite Mars Nightclub's policy prohibiting firearms on business premises. Mars Nightclub's general manager and two other employees were present when Maxwell brought in the gun. Maxwell put the pellet gun in the D.J. booth behind a large rack holding amplifiers. On the day Maxwell brought the gun in, Mars Nightclub's general manager quipped, "I wish you wouldn't have shown this to me.... [S]ome nights I might feel like coming back here and using it on someone." Record at 234–35, 240, 254.

Months later, on August 17, 1996, Hurlow gave Maxwell a ride to work. Hurlow and Maxwell arrived at Mars Nightclub at 8:00 p.m., an hour before it opened for business. Hurlow himself had worked at Mars Nightclub from November 1995 through April 1996. So, while Maxwell was setting up the bar for the evening, Hurlow read a newspaper and talked to other Mars Nightclub employees. In setting up the bar, Maxwell was responsible for stocking liquor, napkins, and cups; getting ice; cutting fruit; making popcorn; and generally cleaning the bar. R. at 203, 425, 555. During business hours, Maxwell's duties included serving drinks and collecting money. Maxwell testified that bartenders were also, to some extent, responsible for entertaining the patrons: "When the Macarena would come up we would have to get up on the bar and do it if we weren't busy or acting like we were busy. We were allowed to play games with the customers, you know, just, and I don't know." R. at 205–06.

After Maxwell had finished setting up the bar, he retrieved the pellet gun from behind the D.J. booth. Maxwell told one Mars Nightclub employee that Hurlow did not like guns and he was going to scare him with it. Maxwell testified that as he walked from the D.J. booth to the bar area, he pulled the trigger on the pellet gun three times and it did not discharge. As he walked past the bar area, Maxwell jokingly asked the assistant manager how much he would pay him to shoot out a nearby lava lamp. The assistant manager responded, "Nothing but you'll owe the bar eighty dollars." R. at 243.

Maxwell then alluded to the fact that Hurlow hated guns and immediately shouted Hurlow's name, pointing the gun in Hurlow's direction to frighten him. R. at 243, 477. Hurlow looked at Maxwell, recognized that Maxwell was pointing a gun at him, and turned away. At that point, the pellet gun fired and a pellet struck Hurlow in the head. As a result of the injury, Hurlow suffers from headaches, dizzy spells, difficulty reading and writing, short-term memory loss, and damage to brain tissue where the pellet is still lodged. R. at 479–89, 494–502.

Subsequently, Hurlow filed a one-count complaint against Mars Nightclub, alleging that the business was liable for his injury through respondeat superior. Hurlow later added a claim against Mars Nightclub for negligent supervision of an employee. A jury began hearing Hurlow's claims on July 18, 2000. At the close of Hurlow's case, Mars Nightclub moved for a judgment on the evidence. The trial court granted Mars Nightclub's motion on the respondeat superior claim but not on the negligent supervision claim. The jury ulti-

mately issued a verdict in favor of Mars Nightclub on the negligent supervision claim. Hurlow now brings one issue for our review: the propriety of the trial court's grant of Mars Nightclub's motion for judgment on the evidence.[1]

## DISCUSSION AND DECISION

### I. Standard of Review

A party may move for judgment on the evidence after the party carrying the burden of proof on an issue has failed to present sufficient evidence to support his claim. Ind.Trial Rule 50(A). In reviewing the grant of judgment on the evidence, we consider only the evidence and reasonable inferences most favorable to the nonmoving party. *Ross v. Lowe*, 619 N.E.2d 911, 914 (Ind.1993). The evidence must support without conflict only one inference that is in favor of the defendant. *Id.* If there is any probative evidence or reasonable inferences to be drawn from the evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper. *Id.*

### II. Respondeat Superior—Liability Through Jocularity

Hurlow contends that Maxwell's shooting of the pellet gun was within the scope of Maxwell's employment at Mars Nightclub. He maintains that even if Maxwell's act was in Maxwell's self-interest, the act partially served Mars Nightclub's interest:

Joking around was part of Maxwell's job expectations as one of Nightclub's bartenders, as it increased Nightclub's business. The pellet gun was brought to the Nightclub to help with its pigeon problem. Nightclub's general manager, upon seeing the pellet gun, *joked around* about shooting it. Maxwell, working as a Nightclub bartender, retrieved the pellet gun to *joke around* with it. After first *joking around* with the assistant manager who did not stop Maxwell, Maxwell *joked around* with Hurlow, and Hurlow was permanently injured as a result.

. . . .

Given Nightclub's managerial assent and participation, the jury could have concluded that some—if not all—of Maxwell's actions were authorized. Since at least some of Maxwell's actions were authorized by management, the question of whether any unauthorized acts were within the scope of his employment is a question for the jury.

Appellant's brief at 11–12 (emphases supplied).

The doctrine of respondeat superior imposes liability on an employer for the wrongful acts of his employee committed within the scope of employment. *Stropes v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind.1989). Our supreme court has recently reaffirmed that the critical inquiry focuses on whether the employee is in the service of his employer when he commits the wrongful act. *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 105 (Ind.1997). In other words, even if an employee "violates the employer's rules, orders, or instructions, or engages in expressly forbidden actions," the employer

---

1. Mars Nightclub moved for a "judgment on the evidence" on the issue of respondeat superior, among other issues. R. at 623. The trial court granted what it called "a directed verdict" on Mars Nightclub's motion. R. at 675. Because Ind.Trial Rule 50 appends the parenthetical term "(Directed Verdict)" to its main heading for "Judgment on the Evidence," the interchangeable use of the terms here is not problematic. The Supreme Court of Indiana supplies the headings for our trial rules. *See West's Annotated Code: Title 34, Appendix Court Rules (Civil),* at III (West 1996).

will still be held accountable as long as the employee was acting within the scope of employment. *Id.* However, an act does not fall within the scope of employment simply because the act could not have occurred without access to the employer's facilities. *Konkle v. Henson,* 672 N.E.2d 450, 457 (Ind.Ct.App.1996).

In some circumstances, an employee may be said to have acted within the scope of employment even when committing a crime, thereby rendering the employer liable under respondeat superior. *Gomez v. Adams,* 462 N.E.2d 212, 223 (Ind.Ct.App.1984). In *Gomez,* a security agency had authorized its security officers to request, receive, and retain personal identification while investigating disturbances or making arrests. One of its officers, pursuant to arrest procedure, requested and retained, among other things, the identification and check-cashing card of an arrestee who had created a disturbance. Later the same day while off duty, the security officer forged the arrestee's name on a stolen blank corporate check and cashed it with the help of the arrestee's check-cashing card. This court held that, as matter of law, the forgery occurred outside the scope of employment because it was so divorced "in time, place, and purpose" from Gomez's employment. *Id.* However, this court did find that the officer's conversion of the arrestee's check-cashing card was within the security officer's scope of employment because the officer had been temporarily authorized to retain the arrestee's identification and personal effects. *Id.* at 225. Thus, the employer may be vicariously liable if " '[the employee's] purpose, was to an appreciable extent, to further his employer's business, even if the act was predominantly motivated by an intention to benefit the employee himself.' " *Warner Trucking,* 686 N.E.2d at 105 (alteration added) (quoting *Stropes,* 547 N.E.2d at 247).

In addition to determining whether the employee's act furthered the employer's business interest, a court also examines the association between the employee's authorized acts and his unauthorized acts. *See id.* (holding that an employer may also be liable if an employee's act " 'originated in activities so closely associated with the employment relationship as to fall within its scope' ") (quoting *Stropes,* 547 N.E.2d at 247). If there is a sufficient association between the authorized acts and the unauthorized acts, the unauthorized acts may fall within the scope of employment. *Stropes,* 547 N.E.2d at 250; *Konkle,* 672 N.E.2d at 457. When a finding is made that some of the employee's acts were authorized, then the question of whether the unauthorized acts were within the scope of the employment goes to the jury. *Konkle,* 672 N.E.2d at 457. Conversely, where none of the employee's acts were authorized, there is no respondeat superior liability and a directed verdict is proper. *See City of Fort Wayne v. Moore,* 706 N.E.2d 604, 607 (Ind.Ct.App. 1999) ("[I]f none of the employee's acts were authorized, the matter is a question of law"), *trans. denied; Konkle,* 672 N.E.2d at 457; *Gomez,* 462 N.E.2d at 224–25.

In *Stropes v. Heritage House Childrens Center of Shelbyville, Inc.,* our supreme court found that the employee initially engaged in authorized acts that culminated in the commission of a number of unauthorized acts. 547 N.E.2d at 249. The employee in *Stropes,* Robert Griffin, was authorized to feed, bathe, and change the bedding and clothing of residents in a children's home. During his shift, Griffin entered the victim's room (the victim was a fourteen-year-old boy suffering from both cerebral palsy and severe mental retarda-

tion) and changed the victim's sheets. Then, Griffin got into bed with the victim and performed oral and anal sex on him. When Griffin had ended the assault, he changed the victim's clothes, which was a fully authorized act. Based on these facts, the *Stropes* court held that summary judgment in Heritage House's favor was improper. *Id.*

In *Southport Little League v. Vaughan,* this court determined that the Southport Little League was liable under respondeat superior for child molestation committed by a volunteer league official. 734 N.E.2d 261, 270 (Ind.Ct.App.2000), *trans. denied.* Kent Simmerman used his position as a Southport Little League official and equipment manager to molest children in a league equipment shed. Simmerman was in the process of fitting the victims with baseball uniforms before he molested them. This court held that the Southport Little League's motion for summary judgment was properly denied because some of Simmerman's acts, such as fitting the children for uniforms, were authorized when he molested them. *Id.* This court further observed that "[b]ecause of his position as an official and equipment manager with Little League, Simmerman was able to persuade the two youths to accompany him to the equipment shed for the pretextual reason of retrieving equipment." *Id.* at 272. This court also supported its determination by noting, "Simmerman, as a Little League official and equipment manager, was *authorized* by the Little League to be at the baseball field during games and practice." *Id.* (emphasis supplied).

■ In sum, an employer is liable under respondeat superior: 1) if an employ-ee's act furthered the employer's business interest to an appreciable extent, or 2) if an employee's authorized acts and unauthorized acts are so closely associated that the employee can be said to have acted within the scope of his employment. *See Warner Trucking,* 686 N.E.2d at 105.

■ Having outlined the basic law of respondeat superior, we turn to Hurlow's claims. Hurlow argues that Maxwell's act of "joking around" with the pellet gun furthered in part Mars Nightclub's business. But counsel for Hurlow acknowledged that Maxwell's act of shooting Hurlow did not further Mars Nightclub's business. During his argument on the motion for judgment on the evidence, Hurlow's counsel asked rhetorically: "I mean, can I tell you straight-faced that that event in and of itself promoted the business?" R. at 664. Hurlow's counsel then supplied the only reasonable answer to his question: "I can't tell you that straight-faced." R. at 664.

We agree with Hurlow's counsel. While an employee's "joking around" with patrons may further Mars Nightclub's business, that purpose could not be met before patrons had even entered the bar. The evidence at trial showed that the only people present at the accidental shooting were Mars Nightclub employees and Hurlow, who is himself a former Mars Nightclub employee. Assuming there are patrons who would enjoy the spectacle of intimidation by pellet gun, there were none present when the gun discharged.[2]

■ In addition, an employer may be liable if the employee's unauthorized act " 'originated in activities so closely associ-

---

2. For this reason, we reject caselaw from sister states, which addresses business-promoted "horseplay" ending in injury to patrons. *See, e.g., Sands v. Ivy Liquors, Inc.,* 192 So.2d 775, 776 (Fla.Dist.Ct.App.1966) (hold-

ing that bar was liable for the shooting of a patron where the bar owner had authorized the presence of the gun on the premises and the employee's duties included socializing with patrons).

ated with the employment relationship as to fall within its scope.'" *Warner Trucking,* 686 N.E.2d at 105 (quoting *Stropes,* 547 N.E.2d at 247). Here, Maxwell's set-up duties were stocking liquor, napkins, and cups; getting ice; cutting fruit; making popcorn; and generally cleaning the bar. R. at 203, 425, 555. When Mars Nightclub was open for business, Maxwell tended bar by serving drinks and collecting money and performed an occasional impromptu "Macarena." R. at 205–06. These acts have no close association with "joking around" with a pellet gun. Thus, unlike the unauthorized acts in *Stropes* and *Southport Little League,* Maxwell's unauthorized acts did not originate from or bear close association to his authorized duties. Furthermore, while management may have allowed Maxwell to keep the pellet gun on the premises, the keeping of the pellet gun was no part of the employment relationship. The management's allowing of the pellet gun on the premises was an issue more properly addressed under a claim for negligent supervision of an employee. The trial court correctly sent that claim to the jury.

## CONCLUSION

There was no evidence that Maxwell's joking around with the pellet gun either furthered Mars Nightclub's business or was so closely associated with Maxwell's authorized duties that it fell within the scope of Maxwell's employment. Therefore, the trial court did not err in granting Mars Nightclub's motion for judgment on the evidence.

Judgment affirmed.

FRIEDLANDER, J., concurs.

RILEY, J., dissents with opinion.

RILEY, Judge, dissenting

I respectfully dissent. On appeal, this Court uses the same standard of review as the trial court in determining the propriety of a directed verdict. *Northern Indiana Public Service Co. v. Sharp,* 732 N.E.2d 848, 856 (Ind.Ct.App.2000). Judgment may be entered only if there is no substantial evidence or reasonable inferences to be drawn therefrom to support an essential element of the claim. *Id.*

A review of the record submitted on appeal shows that Hurlow submitted evidence from which reasonable inference could be made by a jury whether Maxwell's actions were within the scope of his employment. The question of whether an employee is acting within the scope of his employment is a question of fact to be determined in light of the evidence of a particular case. *Trinity Lutheran Church, Inc. v. Miller* (1983), Ind.App., 451 N.E.2d 1099, *trans. denied.*

The evidence shows that Maxwell reported for work to attend to his "opening bartender duties" when the accident happened so that an inference could be made that he was at work tending to his bartender duties. The evidence shows that the Nightclub expected its bartenders to joke around in order to promote its business. The evidence shows that the general manager knew that Maxwell brought the pellet gun to Mars Nightclub and the assistant manager played along with Maxwell's joking about shooting the pellet gun in the bar prior to Hurlow's injury.

Whether Maxwell's act of accidentally shooting the pellet gun was authorized horseplay that resulted in an accident and within the scope of his employment is a question for the jury. Clearly, Mars Nightclub did not authorize Maxwell to shoot Hurlow. But Mars Nightclub did authorize its employee to engage in "joking around" with the customers and did

not discourage the use of the pellet gun at work. Therefore, some of Maxwell's actions were authorized, at least for a time, by Mars Nightclub and therefore whether Maxwell's unauthorized acts were in the scope of employment was a question of fact for the jury. See *Southport Little League v. Vaughan*, 734 N.E.2d 261, 270 (Ind.Ct. App.2000) *trans. denied.*