**Debra UNDERWOOD, Personal Representative of the Estate of Curtis Underwood, Appellant–Plaintiff,**

v.

**GALE TSCHUOR CO., INC., Appellee–Defendant.**

**No. 55A01–0211–CV–461.**

Court of Appeals of Indiana.

Dec. 9, 2003.

Jeffrey K. Orr, C. Dennis Wegner & Assoc., P.C., Indianapolis, IN, Attorney for Appellant.

Joseph M. Dietz, Meils Thompson Dietz & Berish, Indianapolis, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

Debra Underwood, as personal representative of the estate of Curtis Underwood, (the "Estate") appeals the trial court's judgment in favor of Gale Tschuor Co., Inc. ("Tschuor"). The Estate raises four issues, which we restate as:

I. Whether the trial court erred by refusing the Estate's tendered jury instruction regarding its theory of respondeat superior;

II. Whether the trial court erred by refusing the Estate's tendered jury instruction regarding duty to keep a lookout while operating a vehicle;

III. Whether the trial court erred by refusing the Estate's tendered jury instruction regarding breach of contractual safety duties; and

IV. Whether the trial court erred by refusing the Estate's tendered jury instruction regarding spoliation of evidence.

We affirm.

The relevant facts follow. This matter stems from the death of Curtis Underwood ("Underwood") while he was working as a dump truck driver at the Potter's Bridge Park project in Noblesville, Indiana. Tschuor was hired to restore a historic covered bridge, construct parking areas, and construct walking trails for the Potter's Bridge Park project. Guy Ellis worked for Tschuor as an excavator operator. Ellis had been working at the Potter's Bridge Park project since late April 1999. Tschuor also hired CJ's Dump Truck Service, Inc. ("CJ's Dump Truck Service") to provide dump trucks and drivers to haul tree stumps and debris from the jobsite to a landfill. CJ's Dump Truck Service employed Underwood as a dump truck driver. Underwood had worked at the Potter's Bridge Park project on occasion since November 1998. Ellis used the excavator to load debris into the dump trucks provided by CJ's Dump Truck Service, including the dump truck driven by Underwood.

On May 12, 1999, Ellis was using the excavator to clear excess dirt, brush, and tree stumps. Ellis loaded Underwood's dump truck three times that day. On the first load, Underwood parked his dump truck parallel to the excavator. Before Underwood left with the load, Ellis asked him to back up the dump truck directly toward the excavator on the next trip for easier loading. When Underwood returned, he backed his truck up to the excavator as requested. Underwood asked Ellis to remove the tailgate on the dump truck because the tree stumps were getting stuck on the tailgate during unloading. Ellis removed the tailgate and loaded the dump truck again. Underwood then "pulled away ... to the south of where [they] were loading" and put a strap on the back of the dump truck to keep debris from falling out of the dump truck. Transcript at 1195.

When Underwood returned for the third load, he backed up the dump truck and parked in a different location. Ellis told Underwood that he did not like the location of the dump truck because he had to swing the debris farther with the excavator's bucket. While Ellis was loading the dump truck, Gene Boling, Tschuor's project supervisor, asked Underwood why the gate had been taken off of the dump truck.

Boling did not require Underwood to put the gate back on and allowed Underwood and Ellis to continue with the loading. When Ellis finished loading the dump truck, the rear portion of the excavator, or the counterweight, was eight to ten feet from the back of the dump truck. Ellis told Underwood that he was done loading, and Underwood said that he would see Ellis later and got into the dump truck. Ellis did not see Underwood leave the area. Ellis proceeded to clean up brush and debris with the excavator. When Ellis completed piling up the debris, he got out of the excavator and saw Underwood lying on the ground at the back of his truck. After briefly attempting CPR, Ellis ran to the construction trailer and called 9-1-1. Underwood died at the scene.

Ellis told police officers immediately after the incident that "when [he] spun back around towards the truck, [he] saw the driver between the rear axles laying (sic) on the ground. The truck had rolled over him." Appellee's Appendix at 45. However, the evidence revealed that Underwood was crushed between the back of the dump truck and the excavator's counterweight. Tschuor admitted at trial that Underwood "died as a result of injuries sustained when he was crushed between a counterweight on the excavator operated by [Ellis] and a portion of the rear of the . . . dump truck while facing the back of the truck." Transcript at 459. Tschuor also stipulated that blood on the back of the dump truck belonged to Underwood.

The Estate filed a complaint against Tschuor alleging that Tschuor was negligent. Specifically, the Estate alleged that Tschuor breached its duty to supervise its employees in the safe operation of the excavator and, acting by and through its employee, Ellis, breached its duty to Underwood by failing to keep a lookout and by disregarding applicable safety rules.

Tschuor alleged that Underwood's injuries were caused in whole or in part by: (1) the fault of Underwood; and/or (2) the fault of a non-party, CJ's Dump Truck Service.

A jury trial was held in October 2002. The trial court rejected certain final jury instructions tendered by the Estate, including: (1) tendered final instruction number 1 regarding the Estate's theories of the case; (2) tendered final instruction number 4 regarding the duty to maintain a lookout while operating a vehicle; (3) tendered final instruction number 2 regarding Tschuor's contractual duty to comply with safety regulations; and (4) tendered final instruction number 7 regarding spoliation of evidence. The jury found that the Estate's damages were $106,000.00 and assessed fifty percent of the fault to Underwood, forty percent of the fault to CJ's Dump Truck Service, and ten percent of the fault to Tschuor. Thus, the jury awarded $10,600.00 to the Estate from Tschuor.

▮▮▮ The Estate appeals the trial court's rejection of its tendered instructions. The giving of jury instructions lies within the trial court's sound discretion, and we review the trial court's refusal to give a tendered instruction for an abuse of that discretion. *Elmer Buchta Trucking, Inc. v. Stanley,* 744 N.E.2d 939, 944 (Ind. 2001). The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Centennial Mortgage, Inc. v. Blumenfeld,* 745 N.E.2d 268, 278 (Ind.Ct.App. 2001). In determining whether it is error to refuse a tendered instruction, we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record supporting the instruction; and (3) whether the substance of the instruction is covered by other instruc-

tions. *Elmer Buchta Trucking,* 744 N.E.2d at 944. Moreover, a party seeking a new trial on the basis of an improper jury instruction must show "a reasonable probability that substantial rights of the complaining party have been adversely affected." *Id.*

## I.

 The first issue is whether the trial court erred by refusing the Estate's tendered jury instruction regarding its theory of respondeat superior.[1] The Estate tendered its proposed final instruction number 1, which provided that:

> The plaintiff, Estate of Curtis Underwood, has alleged that defendant Gale Tschuor Company had a duty of reasonable care to the decedent, Curtis Underwood. The plaintiff alleges that the defendant breached that duty and that such breach proximately caused Curtis Underwood's death. The plaintiff has the burden of proving the following propositions by a preponderance of the evidence.
>
> 1. That the defendant breached its duty of reasonable care to avoid causing injury to Curtis Underwood in one or more of the following particulars:
> a) the defendant's employee, Guy Ellis, failed to operate his excavator in a safe and reasonable manner; or
> b) the defendant failed to properly supervise Guy Ellis in the safe operation of his excavator.
> 2. That the plaintiff sustained damages as a proximate result of the defen-

dant's breach of its duty of reasonable care.

> As I have stated, the plaintiff must prove these propositions; the defendant has no burden of disproving them.
>
> However, the defendant has claimed the defense that Curtis Underwood was at fault in failing to use reasonable care for his own safety, and that such failure caused his death. The defendant must prove these propositions by a preponderance of the evidence; the plaintiff has no burden of disproving them.

Appellant's Appendix at 49.

The trial court refused the Estate's proposed final instruction number 1 because the substance of the instruction was adequately covered by the trial court's Final Instruction number 9. Final Instruction number 9 provided that:

> This lawsuit has been brought by the plaintiff, Debra Underwood, as the surviving spouse and as the Personal Representative of the Estate of Curtis Underwood, against the defendant, Gale Tschuor Company, Inc. The plaintiff claims that:
>
> > On May 12, 1999, Curtis Underwood was employed by CJ's Dump Truck Service and was operating a tri-axle dump truck at a job site at the Potter's Bridge Park in Noblesville, Hamilton County, Indiana as part of his employment duties with CJ's Dump Truck Service. Gale Tschuor Company, Inc., is an Indiana corporation with its principal place of business in Delaware County, Indiana.

---

1. The doctrine of respondeat superior imposes liability on an employer for the wrongful acts of his employee committed within the scope of employment. *Hurlow v. Managing Partners, Inc.,* 755 N.E.2d 1158, 1161 (Ind. Ct.App.2001), *trans. denied.* The critical inquiry focuses on whether the employee is in the service of his employer when he commits

the wrongful act. *Id.* Even if an employee "violates the employer's rules, orders, or instructions, or engages in expressly forbidden actions," the employer will still be held accountable as long as the employee was acting within the scope of employment. *Id.* at 1161–1162.

Also, on May 12, 1999, Guy Ellis, an employee of Gale Tschuor Company, was operating a Caterpillar excavator at the job site at the Potter's Bridge Park as part of his employment duties with Gale Tschuor Company.

The plaintiff and defendant have stipulated in this case that on May 12, 1999, Curtis Underwood died as a result of injuries sustained when he was crushed between a counterweight on the excavator operated by Guy Ellis and a portion of the rear of the CJ's dump truck while facing the back of the truck. The plaintiff and defendant have further stipulated that the blood on the back of the truck was Curtis Underwood's.

*The plaintiff claims that the defendant, Gale Tschuor Company, was negligent in its duty to supervise its employees in the safe operation of the excavator at the job site, and that as a proximate result of the defendant's negligence, Curtis Underwood suffered injury and died as a result of those injuries.*

The plaintiff has the burden of proving these claims by a preponderance of the evidence. The plaintiff requests compensatory damages from the Defendants.

The defendant, Gale Tschuor Company, denies that it was negligent. The defendant has no burden to disprove the claims of the plaintiff; as I already stated, it is the plaintiff who has the burden to disprove their claims.

However, the defendant, Gale Tschuor Company, claims certain affirmative defenses, namely: that the damages and injuries of the plaintiff were caused in whole or in part by the fault of the non-party, CJ's Dump Truck Service, Curtis Underwood's employer. The defendant has the burden of proving this affirma-

tive defense by a preponderance of the evidence.

This lawsuit is governed by Indiana's Comparative Fault law. Pursuant to that law, you will be required to apportion fault among the parties and the non-party, to determine whether the plaintiff is entitled to recover damages, and if so, the amount of such recovery.

The plaintiff has the burden of proving by a preponderance of the evidence that fault on the part of the defendant caused, in whole or in part, the damages of the plaintiff. The defendant has the burden of proving by a preponderance of the evidence that contributory fault on the part of the non-party caused, in whole or in part, the damages of the plaintiff. The plaintiff has the burden of proving by a preponderance of the evidence that the plaintiff was injured and the amount of the damages to the plaintiff.

*Id.* at 66–68 (emphasis added).

The Estate objected to Final Instruction number 9 because, although it instructed the jury regarding the Estate's claim that Tschuor was negligent by failing to supervise its employees in the safe operation of the excavator at the job site, it did not instruct the jury regarding the Estate's claim that Tschuor was negligent under a respondeat superior theory because Ellis failed to keep an adequate lookout while operating the excavator. In response, the trial court stated:

And I'm sure you'll make that argument to the jury, but that is not necessary for me to instruct the jury. I don't think there's any confusion whatsoever in the jury's mind as to what you're asserting regarding Mr. Ellis did and what you're asserting regarding the Defendant, Gale Tschuor Company did.

Transcript at 1346. The trial court also found that the respondeat superior theory

was covered by Final Instruction number 10, which provided that:

A corporation must act through [its] officers, employees or agents. Any act or omission of an officer, employee, or agent acting within the scope of that person's authority is considered in law to be the act of the corporation. Guy Ellis, Gene Boling, Michael Tschuor, Dale Tschuor and Gale Tschuor, Jr. were employees of the defendant, Gale Tschuor Company, Inc., at all times material to this lawsuit.

Appellant's Appendix at 68.

■ On appeal, the Estate argues that the evidence supported giving its tendered instruction, the substance of the instruction was not adequately covered by the trial court's Final Instruction number 9 and Final Instruction number 10, and the error was not harmless. Tschuor does not dispute that the proposed instruction is a correct statement of the law. However, Tschuor argues that the substance of the proposed instruction was covered by the trial court's Final Instruction number 9 and Final Instruction number 10. Further, Tschuor contends that, even assuming that the trial court improperly refused the instruction, any error is harmless.

■ "A party is entitled to have his theory of the case and the applicable law properly presented to the jury in the instructions." *Peak v. Campbell*, 578 N.E.2d 360, 361 (Ind.1991). In its amended complaint, the Estate alleged that Tschuor breached its duty to supervise its employees in the safe operation of the excavator and that Tschuor breached its duty to Underwood because its employee, Ellis, failed to keep a lookout and disregarded applicable safety rules. The proposed instruction addressed both of the Estate's contentions. However, the trial court's Final Instruction number 9 addressed only the Estate's contention that Tschuor was

negligent in its duty to supervise its employees. The trial court's Final Instruction number 9 did not address the Estate's contention that Tschuor was negligent through respondeat superior because Ellis failed to keep a lookout and follow safety rules. Consequently, the substance of the Estate's proposed instruction was not covered by the trial court's Final Instruction number 9.

■ However, in determining whether the jury was properly instructed, we must read all of the jury instructions together and construe the instructions as a whole. *Parke County v. Ropak, Inc.*, 526 N.E.2d 732, 741 (Ind.Ct.App.1988) ("All jury instructions are to be read together and construed as a whole to determine whether the jury was properly instructed."), *reh'g denied, trans. denied.* Although Final Instruction number 9 did not mention the respondeat superior theory, Final Instruction number 10 provided that "[a]ny act or omission of an officer, employee, or agent acting within the scope of that person's authority is considered in law to be the act of the corporation." Appellant's Appendix at 68, 76. Further, the instruction noted that Ellis was an employee of Tschuor. *Id.* at 76.

Although it would have been more accurate and clear for the trial court to instruct the jury in Final Instruction number 9 regarding the Estate's respondeat theory in addition to its negligent supervision theory, considering the instructions as a whole, the jury was adequately instructed on the Estate's respondeat superior theory. *See, e.g., Hemings v. Redford Lounge, Inc.*, 485 N.E.2d 1378, (Ind.Ct.App.1985) (holding that the instructions as a whole advised the jury that a verdict could be returned against the employer under a respondeat superior theory or a negligent training theory), *reh'g denied, trans. de-*

*nied.* Further, the Estate's opening and closing statements as well as its questioning of witnesses clearly indicated to the jury that it contended that Tschuor was liable not only because of negligent supervision but also because Ellis was negligent in moving the excavator without confirming that Underwood had left the area.[2] *See, e.g., id.* at 1382–1383 n. 8 (noting that it was apparent from the questioning of witnesses and closing arguments that the action against the employer did not proceed solely upon the principle of respondeat superior). Thus, the trial court did not abuse its discretion by refusing the Estate's tendered final instruction number 1 because the substance of the instruction was adequately covered by other instructions.

## II.

■ The next issue is whether the trial court erred by refusing the Estate's tendered jury instruction regarding duty to keep a lookout while operating a vehicle. The Estate's tendered final instruction number 4 provided that: "The operator of a vehicle has a duty to maintain a lookout while operating the vehicle. A proper lookout requires the operator to see that which is clearly visible or which in the exercise of due care would be visible." Appellant's Appendix at 56 (citing *Thornton v. Pender*, 268 Ind. 540, 377 N.E.2d 613, 617 (1978)). The trial court rejected the proposed instruction because it was based upon law regarding automobiles, not excavators. Further, the trial court found that the proposed instruction did not add "anything particularly to . . . the instructions of the jury." Transcript at 1351.

While the proposed instruction correctly states the law dealing with automobiles on highways, we find no Indiana cases applying this proposition to heavy construction equipment operating on a construction site.[3] The Estate argues that the pro-

---

**2.** For example, during opening statements, the Estate argued that:

> When Guy Ellis backed up, he did not look in the rearview mirrors. He did not look over his left shoulder or his right shoulder. And he did not turn the excavator slightly to the left or right. There's overwhelming evidence that this was the obligation that he had followed the safety manual and . . . maintenance manual, operation manual, in the excavator and followed that, and had he done that, Curtis Underwood would be alive.

Transcript at 145. During closing arguments, the Estate argued that:

> What did Tschuor do wrong and Ellis? Ellis is part of Tschuor. The acts of an employee . . . and Ellis had the duty to supervise the area that he was around and to make sure that it was free from . . . Mr. Underwood and . . . the truck. He failed to supervise that area. His acts are the acts of the Tschuor Company. Bowling's acts are the acts of the Tschuor Company. Guy Ellis backed up the excavator without verifying that Underwood had left the area. He didn't look in the mirrors. He didn't look

over his shoulder. And he didn't turn the excavator slightly to determine that.

Transcript at 1374–1375.

**3.** The Estate relies upon *Zanko v. Semmel*, 379 Pa. 242, 108 A.2d 700 (1954). In *Zanko*, a worker was run over by a bulldozer on a construction site. *Id.* at 701. The trial court granted a "nonsuit" because it "determined that the defendant-employee having testified that he 'looked over the course his bulldozer was about to pursue,' which was uncontradicted, he had done all that was required of him and had no reason to know that the decedent was still on the premises." *Id.* at 702. On appeal, the Pennsylvania Supreme Court held that "[i]n view of the absence of weeds or other vegetable matter on his body, the jury could have found that the decedent was standing when struck, and that defendant-employee could have seen had he looked. There was nothing at the rear of the bulldozer to obstruct the driver's vision, and if there were, he had no right to back where he could not see, i.e., take a leap in the dark." *Id.* Thus, the *Zanko* court simply held that the case should have been presented to the jury. *Id.* at 703. Although the jury could have

posed instruction is applicable because its safety expert, Wendell Rust, testified that the excavator's operating manual required that all personnel be cleared from the area before operating the machine or backing it up. Tschuor argues that the operation of an automobile in a highway traffic environment is significantly different than the operation of an excavator in its usual environment. Specifically, Tschuor argues that the jury was presented with evidence that safety regulations permit the movement of excavators even with an obstructed view to the rear if the excavator has a reverse signal alarm distinguishable from the surrounding noise level or if an employee signals that it is safe to move the excavator. The excavator at issue here had an operational "directional backup or ... motion alarm when [it tracked] in either direction." Transcript at 1199.

Although the proposed instruction correctly states the law regarding automobiles, we cannot say that the instruction is applicable to the current situation. There are obviously significant differences between an excavator on a construction site and a motor vehicle being operated on a road, i.e. safety regulations and motion alarms. Based upon the distinctions between the use of an automobile and the use of a piece of heavy construction equipment, the trial court did not abuse its discretion by refusing the Estate's tendered final instruction number 4. *See, e.g., Hartford Steam Boiler Inspection & Ins. Co. v. White*, 775 N.E.2d 1128, 1143 (Ind.Ct.App. 2002) (holding that the trial court did not err by refusing a tendered instruction because of distinctions between the facts of the case and facts in the case upon which the proposed instruction was based), *reh'g denied, trans. denied*. Furthermore, the

substance of this instruction, the scope of Tschuor's duty, was adequately covered by the trial court's general negligence instructions. *See* Appellant's Appendix at 69.

### III.

The next issue is whether the trial court erred by refusing the Estate's tendered jury instruction regarding breach of contractual safety duties. At trial, the Estate argued that Tschuor had assumed a contractual duty to protect the safety of employees working on the construction site and negligently breached that duty. The Estate tendered proposed final instruction number 2, which provided that:

The plaintiff has alleged that the defendant assumed a duty pursuant to a contract with the Indiana Department of Transportation which stated in pertinent part as follows:

VII. Subletting or Assigning the Contract.

\* \* \* \* \*

3. The contractor shall furnish (a) a competent superintendent or supervisor who is employed by the firm, has full authority to direct performance of the work in accordance with the contract requirements, and is in charge of all construction operations (regardless of who performs the work) and (b) such other of its own organizational resources (supervision, management, and engineering services) as the SHA [State highway agency] contracting officer determines is necessary to assure the performance of the contract.

4. No portion of the contract shall be sublet, assigned or otherwise dis-

---

found that the bulldozer operator should not have backed up if he could not see, nothing in *Zanko* indicates that a lookout instruction is required in such a situation. Thus, we find *Zanko* unpersuasive.

posed of except with the written consent of the SHA contracting officer, or authorized representative, and such consent when given shall not be construed to relieve the contractor of any responsibility for the fulfillment of the contract. Written consent will be given only after the SHA has assured that each subcontract is evidenced in writing and that all pertinent provisions and requirements of the prime contract.

## VII. SAFETY: ACCIDENT PREVENTION

1. In the performance of this contract, the contractor shall comply with all applicable Federal, State and local laws governing safety, health and sanitation (23 CFR 635). The contractor shall provide all safeguards, safety devices and protective equipment and take any other needed actions as it determines, or as the SHA contracting officer may determine, to be reasonably necessary to protect the life and health of employees on the job and the safety of the public and to protect property in connection with the performance of the work covered by the contract.

2. It is a condition of this contract, and shall be made a condition of each subcontract, which the contractor enters into pursuant to this contract, that the contractor and any subcontractor shall not permit any employee, in performance of the contract, to work in surroundings or under conditions which are unsanitary, hazardous or dangerous to his/her health or safety, as determined under construction safety and health standards (29 CFR 1926) promulgated by the Secretary of Labor, in accordance with Section 107 of the Contract Work Hours and Safety Standards Act (40 U.S.C. 333).

The plaintiff alleges that the defendant breached its contractual duty and that such breach proximately caused Curtis Underwood's death. The plaintiff has the burden of proving the following propositions by a preponderance of the evidence:

1. That the defendant breached its contractual duty in one or more of the following particulars:

 (a) failing to provide a competent superintendent at the jobsite knowledgeable about safety and experiences in construction, building and hazard analysis; or

 (b) failing to follow the federal Occupational Safety and Health Act which requires each employer to furnish each employee a place of employment which is free from recognized hazards that are likely to cause death or serious physical harm; or

 (c) failing to properly supervise the work of Guy Ellis and Curtis Underwood in loading a dump truck with debris to be removed from the jobsite; or

 (d) failing to provide and maintain a safe area for Curtis Underwood to secure his truck before leaving the jobsite; or

 (e) failing to establish policies and procedures, either written or verbal, to Tschuor employee, Guy Ellis, in the safe operation of the excavator to protect the life and health of employees on the jobsite; or

 (f) failing to follow OSHA equipment standards by ensuring that Guy Ellis read, understood and followed the safety procedures in the excavator operations manual for safeguarding the life and health of employees on the jobsite; or

(g) failing to follow OSHA equipment standards and the safety procedures in the excavator operations manual by not clearing all personnel from the excavator and the area, and by failing to have the operator be satisfied that no one would be endangered before moving the excavator; or

(h) failing to protect the life and health of Curtis Underwood by safeguarding his work area when Guy Ellis backed his excavator into Curtis Underwood and his dump truck without first verifying their location and proximity to him.

2. That the plaintiff sustained damages as a proximate result of the defendant's breach of its contractual duty in one or more of the particulars stated above.

As I have stated, the plaintiff must prove these propositions; the defendant has no burden of disproving them.

However, the defendant has claimed the defense that Curtis Underwood was at fault in failing to use reasonable care for his own safety, and that such failure caused his death. The defendant must prove these propositions by a preponderance of the evidence; the plaintiff has no burden of disproving them.

Appellant's Appendix at 51–53.

The trial court refused the proposed instruction, finding that:

The purpose of final instructions by the Court to the jury is to advise them as to law that's applicable to the case. It is improper for the Court to give instructions that focus on any particular piece of evidence or highlight any particular piece of testimony of any witnesses. Certainly Counsel are free to comment, to characterize the evidence. The jury has in its possession or has reviewed the exhibits including contractual documents and questions regarding the contract, and those are all matters that Counsel may comment on during their final argument. But this instruction places undue focus on one piece of evidence. That is improper. The ... Court has already instructed the jury in its Courts (sic) instructions as to the issues of duty, negligence, reasonable care, proximate cause, and it's up for them to decide whether or not this evidence supports Plaintiff's theory. So instruction 2 is refused.

Transcript at 1349.

 The Estate argues that its proposed instruction is a correct statement of the law because it comes directly from Tschuor's contract, that the evidence supports the giving of the instruction, and that the substance of the instruction is not covered by any other instruction. Tschuor argues that the proposed instruction was confusing, unnecessary, and argumentative. A trial court may properly refuse misleading and confusing instructions tendered by a party. *Pub. Serv. Ind., Inc. v. Nichols,* 494 N.E.2d 349, 357 (Ind.Ct.App. 1986), *reh'g denied.* Additionally, "[a]n instruction which singles out or gives undue prominence to a particular fact or evidence is erroneous." *Hartford Steam Boiler,* 775 N.E.2d at 1142.

The proposed instruction quoted extensively from Tschuor's contract with the Indiana Department of Transportation to construct the Potter's Bridge Park. The instruction cited to the Code of Federal Regulations ("CFR") and the United States Code without any explanation as to the applicability of these statutes and regulations to the facts of this case. For example, the instruction provided that Tschuor "shall not permit any employee, in performance of the contract, to work in surroundings or under conditions which

are unsanitary, hazardous or dangerous to his/her health or safety, as determined under construction safety and health standards (29 CFR 1926) promulgated by the Secretary of Labor, in accordance with Section 107 of the. Contract Work Hours and Safety Standards Act (40 U.S.C. 333)" without any explanation as to what 29 CFR 1926 or 40 U.S.C. 333 require. Additionally, the proposed instruction listed eight different ways in which the Estate alleges that Tschuor violated the contractual provision and then states generally that Tschuor alleges that Underwood was at fault. The proposed instruction placed undue emphasis on the Estate's claims and Tschuor's contract. Consequently, the trial court properly refused the Estate's tendered final instruction 2. *See, e.g., Nichols,* 494 N.E.2d at 357 (holding that the trial court properly refused an instruction that consisted of a string of general and abstract statutory language without any explanation of the statutes' applicability to the facts of the case); *Hartford Steam Boiler,* 775 N.E.2d at 1141–1142 (holding that the trial court properly refused an instruction where the instruction contained selected portions of the administrative code and placed undue emphasis on those particular sections to the exclusion of the remainder of the sections which were also applicable to the case).

### IV.

The next issue is whether the trial court erred by refusing the Estate's tendered jury instruction regarding spoliation of evidence. The Estate tendered proposed final instruction number 7, which provided that:

> Spoliation consists of the intentional destruction, mutilation, alteration, or concealment of evidence.
>
> If you find that the defendant committed spoliation, you may infer that the

evidence was unfavorable to the defendant and that the defendant believed it was at fault and that the decedent, Curtis Underwood, was not at fault.

Appellant's Appendix at 59. In response, the trial court found as follows:

> Your instruction that you're proposing, Plaintiff, in light of the evidence that's been presented in this case, and I ... I'm troubled by it. First of all, I'm not exactly sure ·that there's been evidence to support your theory of spoliation of evidence. And secondly, the way you word the instruction, it ... the second paragraph of that, you may ... you say quote, you may infer that the evidence was unfavorable to the Defendant, the Defendant believed it was at fault and that the decedent was not at fault. I mean, that's a pretty strong direction to the jury from the Court, and I ... you know, certainly you can made the argument about spoliation. It's up to the jury to decide whether or not there is sufficient evidence to support that theory. And I'm sure that if the jury finds that your theory is correct, it will take that into consideration in making its determination. So I will refuse instruction number 7.

Transcript at 1354.

According to the Estate, the proposed instruction correctly stated the law, the evidence supported the giving of the instruction, and the substance of the instruction was not covered by other instructions. Tschuor argues that there was no evidence in the record to support a spoliation instruction. Specifically, Tschuor argues that the Estate presented no evidence of the intentional spoliation of evidence.

At the trial, the Estate's expert, Michael Pepe, testified that· he reviewed photographs taken by the police after the incident and determined that there should have been tracks leading from the excava-

tor to the rear of the dump truck. Pepe testified that the tracks were "obscured in some fashion." Transcript at 653. Pepe also testified that it looked like "something was swept across there ... in places." *Id.* at 654. However, Pepe could not say that the obliteration of the tracks was intentional.

Pepe also testified that he inspected the excavator on March 4, 2000 and discovered that the damaged portion of the counterweight had been painted. Thus, he was unable to perform a test to determine if metal from the dump truck was present on the counterweight. However, the accident occurred in May 1999, and the police investigation was complete in the fall of 1999. Tschuor did not paint the counterweight until February 2000.

The trial court did not abuse its discretion by finding that the evidence presented at trial did not support the giving of the spoliation instruction. The Estate failed to present any evidence that Tschuor intentionally destroyed evidence related to the incident. Even the Estate's expert was unable to testify that the excavator tracks were intentionally destroyed. Further, Tschuor did not paint the counterweight until nine months after the accident. The Estate fails to cite any evidence that Tschuor even knew of Pepe's future inspection of the excavator at the time that Tschuor painted the counterweight. The Estate cites no evidence that Tschuor painted the counterweight in order to intentionally destroy evidence that the counterweight struck the dump truck. Thus, the evidence did not support the giving of the spoliation instruction.

■ Further, we conclude that the proposed instruction is not a correct statement of the law. Our supreme court has held that:

Spoliation consists of "[t]he intentional destruction, mutilation, alteration, or concealment of evidence, usually a document. If proved, spoliation may be used to establish that the evidence was unfavorable to the party responsible." Black's Law Dictionary 1409 (7th ed.1999). "In Indiana, the exclusive possession of facts or evidence by a party, coupled with the suppression of the facts or evidence by that party, may result in an inference that the production of the evidence would be against the interest of the party which suppresses it."

*Cahoon v. Cummings,* 734 N.E.2d 535, 545 (Ind.2000) (citation omitted). The Estate's proposed instruction goes further than allowing spoliation to establish that the evidence was unfavorable or against the interest of the party committing spoliation. The proposed instruction provided that: "If you find that the defendant committed spoliation, you may infer that the evidence was unfavorable to the defendant and that the defendant believed it was at fault and that the decedent, Curtis Underwood, was not at fault." Appellant's Appendix at 59. We find no support for the assertion that spoliation of evidence would permit the jury to infer that the "defendant believed it was at fault and that the decedent, Curtis Underwood, was not at fault."

■ Moreover, we fail to see how the Estate was prejudiced by the trial court's refusal to utilize this instruction. The evidence of the painted counterweight and missing excavator tracks in the soil only tended to prove that Tschuor tried to hide the fact that Underwood was crushed between the excavator and his dump truck. However, Tschuor admitted at trial that Underwood was killed in exactly this manner. For these reasons, the trial court did not abuse its discretion by refusing the Estate's tendered Final instruction number 7. *See, e.g., Hoosier Ins. Co. v. North South Trucking Supplies, Inc.,* 684 N.E.2d

1164, 1174 (Ind.Ct.App.1997) (holding that the trial court did not err by refusing a tendered instruction that contained an incorrect statement of the law).

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

BAKER, J. and BROOK, C.J., concur.